IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AETNA LIFE INSURANCE COMPANY<br>151 Farmington Avenue<br>Hartford, CT  06156,<br><br>     Plaintiff,<br><br>  v.<br><br>HUNTINGDON VALLEY SURGERY CENTER,<br>1800 Byberry Road, Building 10<br>Huntingdon Valley, PA 19006,<br><br>     Defendant. | CIVIL ACTION<br><br>No._____ |

## COMPLAINT

Aetna Life Insurance Company files this Complaint ("Complaint") against Defendant Huntingdon Valley Surgery Center, and in support thereof avers as follows:

### I. PARTIES

1. Plaintiff Aetna Life Insurance Company ("Aetna") is a corporation organized under the laws of the State of Connecticut with its principal place of business in the State of Connecticut.

2. Defendant Huntingdon Valley Surgery Center ("Huntingdon Valley") is a Pennsylvania company that regularly conducts business in Huntingdon Valley, Montgomery County, Pennsylvania.

### II. JURISDICTION AND VENUE

3. This Court has personal jurisdiction over Huntingdon Valley, which is a Pennsylvania entity doing business in Pennsylvania.

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is an action between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution, laws or treaties of the United States.

6. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(1) because Huntingdon Valley resides or may be found in this judicial district, and pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred here.

### III. INTRODUCTION

7. Huntingdon Valley is a physician-owned facility located in Huntingdon Valley, Pennsylvania that engages in an overbilling scheme for financial reasons. Pursuant to the scheme described hereafter, Huntingdon Valley sought and received millions of dollars in exorbitant fees from Aetna. In fact, since 2009, Huntingdon Valley has billed Aetna in excess of $30 million and Aetna has allowed Huntingdon Valley more than $20 million in fees, as the scheme implicates thousands of claim lines.

8. Huntingdon Valley is a "non-participating" (*i.e.*, non-contracted) medical facility. It would not be able to submit such exorbitant fee requests to Aetna if it were an in-network hospital. As more fully provided below, although Huntingdon Valley promotes its services as "BETTER CARE . . . BETTER DOCTORS,"[1] its physicians-owners participate in Aetna's network and treat patients at other participating facilities where the billed amounts are dwarfed by Huntingdon Valley's outrageous bills.

---

[1] *See* http://www.huntingdonvalleysurgerycenter.com.

9.      The owners of Huntingdon Valley are among the physicians who refer patients to the facilities and profit from doing such. The physician-owners ostensibly treat patients at Huntingdon Valley based upon reimbursement potential. The damages sought in this case relate to facility fees and related fees billed by and paid to Huntingdon Valley. In essence, Huntingdon Valley is gouging Aetna and its members for millions of dollars for the use of the brick, mortar, and equipment at its facilities. Separately, and not part of the damages sought in this suit, the physicians are paid for their services provided at Huntingdon Valley. That said, because of the inherent conflict of interest involved in a physician referring patients to a facility in which the physician has an ownership interest, strict and complete disclosure to patients is mandated as a matter of ethics.[2] On information and belief, Huntingdon Valley has fallen well short of its disclosure obligations, including those applicable to Aetna members covered by Medicare.

10.     Huntingdon Valley's practice of egregious billing is strategic and no accident. Further, Huntingdon Valley's unlawful tactics are especially improper considering the elevated

---

[2] The Code of Medical Ethics of the American Medical Association states, in pertinent part:

> When physicians enter into arrangements that provide opportunities for self-referral they must:
>
> * * *
>
> (4) Disclose their financial interest in the facility, product, or equipment to patients; inform them of available alternatives for referral; and assure them that their ongoing care is not conditioned on accepting the recommended referral.

Code of Medical Ethics of the American Medical Association, Opinion 8.0321 (ed. 2010-11).

public consciousness over health care costs and public policy to keep health care costs affordable so that more people can have access.

11.     Aetna brings this action for, among other things, equitable relief, unjust enrichment, violations of the Pennsylvania Insurance Fraud Statute, and alternative equitable relief under the Employee Retirement Income Security Act ("ERISA") for injuries it suffered as a result of the excessive and unreasonable fees that Huntingdon Valley charged Aetna and its members.  Aetna also seeks injunctive relief requiring Huntingdon Valley to fully notify and apprise all patients, including Aetna's members, when its facilities are owned by the physicians who have referred the patients to Huntingdon Valley.  Additionally, this Court should enjoin Huntingdon Valley from engaging in its billing schemes, including charging unreasonable fees, as detailed herein.

## IV.    FACTUAL BACKGROUND

### A.    The Health Care Benefits That Aetna Provides To Its Members

12.     Aetna provides access to coverage and benefits to its members pursuant to a variety of health care benefit plans and policies of insurance, including: (i) self-funded plans for which Aetna provides various third-party claims administrative services; (ii) plans insured under group policies issued by Aetna where plans are established and maintained by private employers; (iii) plans covering federal employees; (iv) plans covering employees of state governmental entities; (v) church plans; (vi) policies issued to individuals; and (vii) Medicare.

13.     Aetna's benefit plans include covered benefits for in-network services that participating providers having contracts with Aetna or its affiliates provide to its members. Aetna's plans also include covered benefits for out-of-network services that non-participating hospitals or other facilities, such as Huntingdon Valley, provide to Aetna's members.  For each

patient-beneficiary, Huntingdon Valley seeks money from Aetna for its fees, which it is now apparent were submitted regularly to "gouge" and abuse the healthcare system.

### B.   In-Network Benefits From Participating Providers

14.   Aetna provides in-network health care benefits to its members through a network of "participating" medical providers who have entered into contracts with Aetna to render services to members in return for fees at contract rates. Medical providers who enter into contracts with Aetna are commonly known as participating providers, and the contracts between Aetna and participating providers require the participating provider to accept in-network rates for services as payment in full. The Aetna member ordinarily has no financial obligation to the participating provider beyond a small, fixed copayment, or coinsurance, and the participating provider is contractually prohibited from billing the subscriber for any other amounts (*i.e.*, balanced billing), except under limited circumstances.

15.   The agreements between Aetna and its participating providers allow Aetna to deliver health care benefits efficiently through its provider network, to anticipate and control the cost of care, to reduce financial risk to both employer funded and fully insured plans, to reduce its members' financial risk for health care services, and to promote the quality of care through its credentialing and peer review processes.

16.   Health benefit plans encourage patients/members to utilize participating providers, an arrangement beneficial to both the participating providers, who enjoy increased patient traffic, and the patients/members who receive appropriate, high-quality health care services at a fair and reasonable cost. Plan provisions that require the member to pay coinsurance, deductibles, and other portions of a hospital's charges for services encourage the member to be sensitive to health care costs and utilize hospitals with lower fees, which makes medical insurance less expensive.

17. Plan members have ready access to participating providers. Aetna publishes directories of participating providers to its members who consume health care services in Pennsylvania. Members may obtain medical services from these providers with little or no financial risk or out-of-pocket expense.

### C. Out-of-Network Benefits From Non-Participating Providers

18. Aetna provides health benefit plans and policies of insurance that include out-of-network benefits for services rendered to its members by non-participating providers, such as Huntingdon Valley, which have not entered into contracts with Aetna and have not agreed to accept in-network rates as payment in full for their services. When Huntingdon Valley submits its claims to Aetna for reimbursement for the medical services performed at its facilities, its fees are not set in advance by the terms of a fee agreement with Aetna.

19. Non-participating providers set their own fees for services rendered to their patients. Aetna health benefit plans and policies of insurance that cover services by non-participating providers may limit the benefits available for out-of-network services and require members to contribute to the cost of care rendered by non-participating providers.

20. Pursuant to the terms of these benefit plans and policies of insurance, the patient/member may be responsible for payment of charges for services which their health care plan does not cover or exceed the amount of the reimbursement Aetna paid. The amount by which a provider's charge reasonably exceeds the amount payable under the plan is commonly referred to as the "balance bill."

### D. Huntingdon Valley's Out-Of-Network Strategy And Scheme To Defraud Aetna

21. Huntingdon Valley's strategy, sometimes referred to politely as an "out-of-network strategy," is implemented when non-contracted medical facilities like Huntingdon

Valley target and siphon off high-value patients from in-network facilities. The target patients include those whose health benefit plans and policies of insurance provide ready access to out-of-network benefits for services that non-participating providers, such as Huntingdon Valley, render to Aetna's members. In furtherance of its out-of-network strategy, the Defendant has employed various underhanded schemes and practices, which are described below, to overbill and be overpaid by Aetna for medical services provided to its members. This suit is Aetna's effort to obtain reimbursement for those overpayments.

22. Between January 2009 and the present, Huntingdon Valley submitted thousands of claims for payment to Aetna for services rendered to Aetna members. (A spreadsheet showing the claims paid by Aetna to Huntingdon Valley is attached hereto as Exhibit "A.")[3]

23. Huntingdon Valley has billed Aetna for outpatient medical services at rates that grossly exceed the usual, customary and reasonable fees in the same market area. These services are provided on an outpatient basis and involve no admission to the hospital. As a result, Huntingdon Valley rings up huge bills without contacting the member's healthcare plan, as it would have to do if the patient was going to be admitted.

24. The instances in which Huntingdon Valley excessively billed Aetna are numerous, to say the least. On one occasion, Huntingdon Valley billed Aetna nearly $172,000 for hammertoe surgery, a procedure that reputable in-network facilities would charge a fraction to perform. Huntingdon Valley also billed Aetna nearly $63,000 for hernia surgery, which involved only one day of treatment. On other occasions, Huntingdon Valley billed

---

[3] The exhibit shows the date of service, provider identification number, billed amount, allowed amount, paid amount, Aetna's claim identification number, the provider's tax identification number, and year of service. In order to protect the confidentiality of the patients and their medical records, Plaintiff has not identified the patients or other protected health information.

approximately $34,000 to repair a nasal fracture, over $27,000 to repair a trigger finger, and $16,000 to repair ingrowing nails. The amounts billed and allowed are *exponentially* in excess of the Medicare rates and amounts billed by in-network facilities.

25. One way Huntingdon Valley has managed to perpetuate its scheme is by having the participating physician-owners self-refer patients to Huntingdon Valley for outpatient surgery despite originally presenting to a participating physician's office. By way of example, in September 2009, a patient presented with contractures of her toes on her left foot (*i.e.*, hammertoes) to a participating physician's office. The physician who performed evaluation and management services participates in Aetna's network, and has an ownership interest in Huntingdon Valley. This physician "cherry-picked" the patient and performed the surgery at Huntingdon Valley as the attending physician. For the one-day outpatient treatment that was provided, Huntingdon Valley billed nearly $172,000 (of which Aetna allowed nearly $130,000). Accordingly, although the patient originally presented to a participating physician's office and was seen by a participating doctor, the patient was ostensibly steered away from obtaining treatment at a participating facility, and directed to a non-participating facility where the physician-owner could enjoy a share of the facility bills in addition to his physician bills.

26. Similarly, in October 2011, another patient presented to a participating physician's office with bunions and hammertoes on both feet. The physician who performed evaluation and management services participates in Aetna's network, and has an ownership interest in Huntingdon Valley. In November 2011, the physician-owner performed surgeries on her left foot at Huntingdon Valley, and billed nearly $121,000. Approximately one month later, the same patient presented to a participating facility, and the same physician performed similar surgeries on her right foot. However, the participating facility billed less than $26,000.

Therefore, for similar surgeries to correct bunions and hammertoes on each foot by the same surgeon, Huntingdon Valley billed almost five times the amount that a participating facility billed.

27.     Additionally, Huntingdon Valley has separately billed for services that are included in, or incidental to, another procedure.  For example, Huntingdon Valley has inappropriately billed for chondroplasty under CPT Code 29877 in conjunction with arthroscopic knee surgery with meniscectomy under CPT Codes 29880 and 29881.  Such a billing technique is improper because the meniscetomy includes chondroplasty performed in the same compartment.  From 2009 through present, Huntingdon Valley has improperly billed under CPT Code 29877 for over $200,000, of which Aetna allowed over $120,000.

28.     Further, on multiple occasions, Huntingdon Valley has separately billed for the implantation of mesh or other prosthesis under CPT Code 49568 in conjunction with hernia repair procedures under CPT Codes 49505 (reducible inguinal hernia), 49520 (recurrent inguinal hernia), and 49572 (epigastric hernia) despite its impropriety.  Such a billing technique is improper as CPT Code 49568 is generally limited for use with incisional or ventral hernia repair procedures.  As an example, in February 2010, a patient presented to Huntingdon Valley with an inguinal hernia.  Huntingdon Valley billed $27,605, which included over $19,000 to repair the hernia on the left side and nearly $8,000 to implant the mesh.  Two months later, in April 2010, the same patient presented with the same diagnosis.  Huntingdon Valley billed nearly $20,000 – which included the same procedure to repair the hernia on the right side.  However, Huntingdon Valley did not bill the nearly $8,000 to implant the mesh, although Huntingdon Valley billed $260 for the mesh as a supply.

29. Huntingdon Valley even submits excessive bills to Aetna for members who are on Medicare, although Aetna made payments according to the Medicare allowable rate. By way of example, Huntingdon Valley has billed Aetna approximately $107,000 for bunion and hammertoe surgery, $27,000 for surgery to repair a trigger finger, $21,000 for cataract surgery, and $16,500 for carpal tunnel surgery.

30. Simply put, Huntingdon Valley is involved in a scheme to gouge the health care system, Aetna, and its members out of millions of dollars. Prior to Aetna filing this suit, the Defendant had succeeded, at least temporarily. The Defendant's billing practices are examples of greed over need and its abuse must be stopped. Aetna brings this action under state and federal law for the disgorgement of these excessive fees and for other damages, as set forth more particularly herein. Aetna also seeks injunctive relief concerning the Defendant's wrongful billing practices.

## COUNT I
## EQUITABLE RELIEF

31. Aetna incorporates by reference all of the foregoing paragraphs as if fully set forth below.

32. Huntingdon Valley is engaging in practices that violate Pennsylvania law and other applicable standards of conduct concerning the billing practices of medical providers and the disclosure of material information to patients.

33. Aetna seeks injunctive relief that the Defendant cease and desist these unlawful practices. Specifically, Aetna requests that the Defendant be enjoined from: (1) balance billing Aetna's members for unreasonable fees; (2) submitting medical claims to Aetna that exceed the usual, customary and reasonable fees for similar services provided at in-network facilities; and (3) waiving, reassuring, or making other promises to induce Aetna members to use their

facilities, including reassurances that they would not pay more in coinsurance, deductibles, or other patient-responsibility charges than they would at an in-network facility.

34. Aetna also requests that the Court require Huntingdon Valley to fully notify and apprise all patients, including Aetna's members, when their referring physicians have an ownership interest in the Defendant's facilities and offer Aetna's members other alternative in-network facilities where they can be treated.

WHEREFORE, Aetna respectfully requests that this Court enter judgment in its favor and against Huntingdon Valley, award Aetna monetary damages, plus attorney's fees, costs and interest, and award Aetna such additional relief as this Court deems appropriate.

## COUNT II
## UNJUST ENRICHMENT

35. Aetna incorporates by reference all of the foregoing paragraphs as if fully set forth below.

36. Defendant Huntington Valley received substantial financial benefits by submitting medical claims to Aetna that exceed the usual, customary and reasonable fees for similar services provided at in-network facilities.

37. Defendant has been unjustly enriched by submitting medical claims to Aetna that exceed the usual, customary and reasonable fees for similar services provided at in-network facilities.

38. Defendant knew, but never honestly informed Aetna, that its charges for services were outside of the usual, customary and reasonable fees for similar services provided at in-network facilities.

39. Under these circumstances, it is inequitable for Defendant to retain the monies it charged for services where the fees charged were not usual, customary and reasonable fees for similar services provided at in-network facilities.

WHEREFORE, Aetna respectfully requests that this Court enter judgment in its favor and against Huntingdon Valley, in an amount in excess of $100,000.00, reasonable investigation expenses, attorneys' fees, costs of suits, interests of all sums owed, and all such other legal and equitable relief that this Court deems just and proper, including exemplary damages as may be allowed by law.

## COUNT III
## EQUITABLE RELIEF (ERISA)

40. Aetna incorporates by reference the foregoing paragraphs as if fully set forth below.

41. In the alternative, to the extent this dispute involves the exercise of Aetna's discretion under an ERISA plan, under the terms of ERISA, Aetna is an ERISA fiduciary. Aetna contends its state law claims may be pursued because they do not relate to ERISA and are not preempted and because some of the plans in question are non-ERISA plans.

42. To the extent that Huntingdon Valley's entitlement to be paid arises pursuant to Aetna's plan members' assignments to it, Huntingdon Valley stands in the shoes of an ERISA beneficiary.

43. Huntingdon Valley is in actual or constructive possession and control over specifically identifiable funds that belong in good conscience to Aetna or the ERISA plans at issue in this suit.

44. As authorized by 29 U.S.C. § 1132(a)(3), Aetna therefore seeks against Huntingdon Valley all relief that is typically available in equity.

WHEREFORE, without limitation, Aetna seeks: (i) a constructive trust over the fees that Huntingdon Valley improperly demanded and received; (ii) an order permanently enjoining Huntingdon Valley from disposing of or transferring any of the funds still in its possession and control; (iii) an order requiring the return of such funds and a tracing of any portion of the funds no longer in Huntingdon Valley's possession or control; and (iv) a constructive trust over any such funds in the possession or control of Huntingdon Valley as a result of the fraudulent conduct specified herein.

### COUNT IV
### INSURANCE FRAUD
### VIOLATIONS OF 18 PA. CONS. STAT. § 4117(a)(2)

45. Aetna incorporates by reference the foregoing paragraphs as if fully set forth below.

46. Aetna is an "insurer" within the meaning of 18 Pa. Cons. Stat. § 4117(a)(2) and 4117(l).

47. Defendant Huntington Valley is a "person" within the meaning of 18 Pa. Cons. Stat. § 4117(a)(2) and 4117(l).

48. The insurance claim forms, bills, medical reports, and other records produced by Huntington Valley in support of its claims for reimbursement are "statements" within the meaning of 18 Pa. Cons. Stat. § 4117(a)(2) and 4117(l).

49. Defendant Huntington Valley acted in violation of 18 Pa. Cons. Stat. § 4117(a)(2) by knowingly presenting or causing to be presented to Aetna statements that contained false, incomplete, or misleading information concerning facts material to such insurance claims.

50. These acts were related and continuous and therefore constituted a pattern of fraud under 18 Pa. Cons. Stat. § 4117(g).

51. Aetna was injured as a result of Huntington Valley's conduct.

WHEREFORE, Aetna respectfully requests that this Court enter judgment in its favor and against Huntingdon Valley, for compensatory damages in an amount in excess of $100,000.00, reasonable investigation expenses, claims handling expenses, attorneys' fees, costs of suits, treble damages, interests of all sums owed, and all such other legal and equitable relief that this Court deems just and proper, including exemplary damages as may be allowed by law.

## COUNT V
## INSURANCE FRAUD
## VIOLATIONS OF 18 PA. CONS. STAT. § 4117(a)(3)

52. Aetna incorporates by reference the foregoing paragraphs as if fully set forth below.

53. Aetna is an "insurer" within the meaning of 18 Pa. Cons. Stat. § 4117(a)(3) and 4117(l).

54. Defendant Huntington Valley is a "person" within the meaning of 18 Pa. Cons. Stat. § 4117(a)(3) and 4117(l).

55. The insurance claim forms, bills, medical reports, and other records produced by Huntington Valley in support of its claims for reimbursement are "statements" within the meaning of 18 Pa. Cons. Stat. § 4117(a)(3) and 4117(l).

56. Defendant Huntington Valley acted in violation of 18 Pa. Cons. Stat. § 4117(a)(3) by knowingly, and with an intent to defraud Aetna, assisting, abetting, soliciting, and/or conspiring with others to prepare statements that were intended to be presented to Aetna in

connection with or in support of insurance claims that contained false, incomplete, or misleading information concerning facts material to those insurance claims.

57. These acts were related and continuous and therefore constituted a pattern of fraud under 18 Pa. Cons. Stat. § 4117(g).

58. Aetna was injured as a result of Huntington Valley's conduct.

WHEREFORE, Aetna requests that this Court enter judgment in its favor and against Huntingdon Valley, for compensatory damages in an amount in excess of $100,000.00, reasonable investigation expenses, claims handling expenses, attorneys' fees, costs of suits, treble damages, interests on all sums owed, and all such other legal and equitable relief that the Court deems just and proper, including exemplary damages as may be allowed by law.

## COUNT VI
## INSURANCE FRAUD
## VIOLATIONS OF 18 PA. CONS. STAT. §§ 4117(a)(2) and 4117(a)(5)

59. Aetna incorporates by reference the foregoing paragraphs as if fully set forth below.

60. Defendant Huntington Valley acted in violation of 18 Pa. Cons. Stat. § 4117(a)(5) by knowingly benefitting, directly or indirectly, from the proceeds derived from violations of 18 Pa. Cons. Stat. § 4117(a)(2) as set forth above.

WHEREFORE, Aetna requests that this Court enter judgment in its favor and against Huntingdon Valley, for compensatory damages in an amount in excess of $100,000.00, reasonable investigation expenses, claims handling expenses, attorneys' fees, costs of suits, treble damages, interests on all sums owed, and all such other legal and equitable relief that the Court deems just and proper, including exemplary damages as may be allowed by law.

## COUNT VII
## INSURANCE FRAUD
## VIOLATIONS OF 18 PA. CONS. STAT. §§ 4117(a)(3) and 4117(a)(5)

61. Aetna incorporates by reference the foregoing paragraphs as if fully set forth below.

62. Defendant Huntington Valley acted in violation of 18 Pa. Cons. Stat. § 4117(a)(5) by knowingly benefitting, directly or indirectly, from the proceeds derived from violations of 18 Pa. Cons. Stat. § 4117(a)(3) as set forth above.

WHEREFORE, Aetna requests that this Court enter judgment in its favor and against Huntingdon Valley, for compensatory damages in an amount in excess of $100,000.00, reasonable investigation expenses, claims handling expenses, attorneys' fees, costs of suits, treble damages, interests on all sums owed, and all such other legal and equitable relief that the Court deems just and proper, including exemplary damages as may be allowed by law.

OF COUNSEL:

**ELLIOTT GREENLEAF
& SIEDZIKOWSKI, P.C.**

Dated: June 5, 2013

Respectfully submitted,

*/s/ James C. Crumlish, III   ECF#JCC5010*
John M. Elliott
James C. Crumlish, III
John P. Elliott
James J. McCarrie, II
Elliott Greenleaf & Siedzikowski, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000