## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AETNA LIFE INSURANCE COMPANY<br>151 Farmington Avenue<br>Hartford, CT  06156,<br><br>        Plaintiff,<br><br>    v.<br><br>HUNTINGDON VALLEY SURGERY<br>CENTER,<br>1800 Byberry Road, Building 10<br>Huntingdon Valley, PA 19006,<br><br>FOUNDATION SURGERY AFFILIATES, LLC<br>14000 Portland Avenue, Suite 200<br>Oklahoma City, Oklahoma 73134<br><br>FOUNDATION SURGERY<br>MANAGEMENT, LLC<br>14000 Portland Avenue, Suite 200<br>Oklahoma City, Oklahoma 73134<br><br>        Defendants. | CIVIL ACTION<br><br>No. 2:13-03101 |

## AMENDED COMPLAINT

Aetna Life Insurance Company ("Aetna") files this Amended Complaint against a group Defendants, through which Aetna seeks to recover monetary damages and other appropriate relief arising from Defendants' violations of Pennsylvania law.  In support of Aetna's claims, Aetna alleges the following:

## I.    INTRODUCTION

1.    For years, Defendants have been engaged in an elaborate scheme to obtain from Aetna inflated payments for surgical procedures and other medical services provided to Aetna members.  This is accomplished through illegal kickbacks paid to physicians, who then funnel

Aetna members to Huntingdon Valley Surgery Center so that Aetna can be purposely overcharged for the medical services provided.   These illegal business practices amount to insurance fraud, interfere with Aetna's contractual relations, including those with its network of physicians, and undermine Aetna's efforts to provide affordable health care benefits to its members.

      2.      Aetna also seeks injunctive relief to force Defendants to cease their ongoing illegal business practices, including the inflation of medical charges and the payment of kickbacks to physicians for referral of Aetna members to Huntingdon Valley Surgery Center. Those kickbacks involve, primarily, Defendants' inflation of facility fees charged by Defendants to Aetna for use of that medical facility, and then paying a portion of that inflated charge to physicians as a kickback for the referral.

## II.   JURISDICTION AND VENUE

      3.      This Court has subject matter jurisdiction over all of the claims at issue in this case pursuant to 28 U.S.C. § 1332(a), because the parties are completely diverse and the matter in controversy for each cause of action exceeds the statutory requirement.

      4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the events giving rise to the claim occurred within this District and because Defendants may be found within this judicial district.

      5.      This Court has personal jurisdiction over all Defendants because they regularly conduct business within this judicial district, market their services in this judicial district, employed their improper billing scheme in this judicial district, and otherwise engaged in the improper conduct at issue in this case within this judicial district.

III.    **THE PARTIES**

A.      **Plaintiff Aetna Life Insurance Company**

6.      Aetna is a Connecticut corporation with its principal place of business in Hartford, Connecticut.  Plaintiff Aetna provides health insurance and administrative services throughout the United States.  Aetna offers access to health plans to more than 35 million people.

B.      **Defendants**

7.      Defendant Huntingdon Valley Surgery Center ("Huntingdon Valley") is a Pennsylvania limited partnership with a formal name of Foundation Surgical Affiliate of Huntingdon Valley L.P.  It has a principal location at 1800 Byberry Road, Building 10, Huntingdon Valley, Pennsylvania 19006.  Huntingdon Valley portrays itself as a state of the art, outpatient surgery center.  Huntingdon Valley, as described in more detail below, is not a part of Aetna's network of contracted medical care providers.

8.      Huntingdon Valley has at least twenty-two physician-owners, who are limited partners in Huntingdon Valley. Aetna refers to these limited partners as "physician-owners" throughout this Amended Complaint.

9.      Defendant Foundation Surgery Affiliates, LLC ("FSA") is a Nevada limited liability company with a principal place of business located at 14000 Portland Avenue, Suite 200, Oklahoma City, Oklahoma 73134.

10.     Defendant Foundation Surgery Management LLC ("FSA Management") is a Delaware limited liability company with the same principal place of business as FSA.

11.     Throughout the Complaint, Aetna refers to FSA and FSA Management collectively as the "Foundation Defendants," where appropriate.

**C.     The Foundation Defendants' Relationship with Huntingdon Valley.**

12.     FSA controls, manages, and operates stand-alone surgical centers across the United States, including Huntingdon Valley.  FSA manages Huntingdon Valley both directly and through FSA Management.

13.     The Foundation Defendants operate surgery centers such as Huntingdon Valley through managers and executives that they effectively control.  In this case, the Foundation Defendants direct and supervise Huntingdon Valley's "Administrator / Chief Executive Officer," who has an FSA e-mail address. The Foundation Defendants also establish business policies at Huntingdon Valley, including policies to facilitate the illegal kickback scheme described below. In fact, Huntingdon Valley insists that a Foundation Defendant employee is the person most knowledgeable concerning the bills and other statements Huntingdon Valley submits to Aetna.

14.     FSA and FSA Management provide various services to outpatient surgery centers such as Huntingdon Valley, including operations management, tax oversight, budgeting, benchmarking, financial projections, equipment acquisition, data warehousing, physician and facility credentialing, clinical support, contract and managed care negotiation, contract impact analysis, revenue management, billing and coding audits, the creation of governing policies and procedures, payroll operations, staff recruitment, benefit administration, legal and regulatory compliance, information technology support, and public relations.

15.     In exchange for their services, FSA and FSA Management retain an equity interest in each of the surgery centers they operate, including Huntingdon Valley.

## IV.   FACTS

### A.   Aetna Uses A Contracted Network of Physicians and Medical Facilities To Provide Affordable Health Benefits To Its Members.

16.     In Pennsylvania, and throughout the United States, individuals who are not eligible for Medicare or Medicaid typically obtain health benefits through managed care companies, such as Aetna.  Aetna provides these benefits by offering insurance through plans offered by employers, or through insurance purchased directly by individuals.  Aetna also offers administrative services to health plans that are self-funded by employers or other groups.  In addition to the harm caused to Aetna directly, employers and other plan sponsors are also harmed by the illegal business practices described in this Amended Complaint.

17.     Aetna strives to provide its members with access to high quality medical services through health benefits that are affordable.  Aetna's network of contracted medical care providers is a key component of Aetna's effort to ensure that health care benefits are affordable to its members.

18.     Through contracts with physicians and medical facilities, Aetna can establish rates of payment for medical care that are lower than they would be without a negotiated, contracted rate.  The physicians and medical facilities participating in Aetna's contracted network benefit from this arrangement as well, because large numbers of Aetna members prefer to seek medical care from those contracted medical care providers, so that the members can obtain the advantage of the rates Aetna negotiated.  When an Aetna member treats with physicians or medical facilities that are contracted with Aetna, that Aetna member is generally responsible only for the payment of a small co-pay or deductible.

19.     Another very important feature of Aetna's contracted network is that it affords Aetna the means, through credentialing and peer review processes, of ensuring that Aetna members have access to qualified providers of medical care.

20.     In the region of Southeastern Pennsylvania, alone, Aetna's network of contracted medical care providers includes thousands of physicians and dozens of medical facilities, giving Aetna members in this area a broad range of options in seeking treatment.  For example, Aetna's participating hospitals in this area include, inter alia, Mercy Suburban Hospital, Albert Einstein Medical Center, Lankenau Medical Center, Abington Memorial Hospital, Bryn Mawr Hospital, Temple University Hospital, Doylestown Hospital, Thomas Jefferson University Hospital, and Holy Redeemer Hospital and Medical Center.

21.     There may nevertheless be times when an Aetna member chooses to, or must, seek medical care from a provider who is not within Aetna's contracted network.  In such a case, the Aetna member may still be afforded coverage, but in that event, the Aetna member would typically have to pay significantly higher co-pays, co-insurance, or deductibles.  These out-of-network co-pays, co-insurance, and deductibles can be many multiples higher than they would be at facilities within Aetna's network.

**B.     Defendants Provide Illegal Kickbacks To Physician-Owners To Defeat The Benefits Of Aetna's Provider Network.**

22.     The physician-owners of Huntingdon Valley all have contracts with Aetna, and are part of Aetna's network of contracted medical care providers.  A material aspect of each of these contracts is the obligation of each physician to refer patients in need of surgery to other medical facilities that are also under contract with Aetna.

6

23.     This feature of Aetna's contracts with the physician-owners is critical to maintain the integrity of the contracted network, to control the rising costs of medical care, and to ensure the affordability of health benefits.

24.     Through their contracts with Aetna, the physician-owners treat numerous patients who are also Aetna members, and those physician-owners are uniquely situated to recommend to Aetna members where they should go to receive surgery and other medical procedures, when the need arises.

25.     Huntingdon Valley, owned by the Foundation Defendants and the physician-owners, has no contract with Aetna.  In derogation of Aetna's contractual rights and via illegal financial inducements described below, Defendants induce the physician-owners to refer Aetna members to Huntingdon Valley, instead of a facility within Aetna's contracted network, when those patients are in need of surgical services.

26.     The physician-owners refer Aetna members to Huntingdon Valley for surgical services even though those same physicians maintain offices that are geographically close to or even within skilled and qualified hospitals or medical facilities that are contracted with Aetna, which perform the same types of surgical services as those provided by Huntingdon Valley.  For example, physician-owner Dr. Larry I. Barmat works at Abington Reproductive Medicine, which has an office located within Abington Memorial Hospital and which can provide the same surgical services as Huntingdon Valley.  This physician-owner nevertheless refers his patients to Huntingdon Valley, because of the financial inducements offered by Defendants.

27.     Huntingdon Valley itself is located just five miles from Abington Memorial Hospital and just six miles from Holy Redeemer Hospital.  Huntingdon Valley's physician-owners have privileges at both Abington Memorial Hospital and Holy Redeemer Hospital, which

are within Aetna's network of contracted facilities. The physician-owners could refer their patients to these hospitals for surgery, but they choose Huntingdon Valley instead, because of Defendants' financial inducements.

28.     Defendants instruct the physician-owners to identify patients who have Aetna benefits and to determine whether each particular patient's benefits package includes coverage for services performed at facilities that are not under contract with Aetna. Defendants' goal is to have the physician-owners refer the patient to Huntingdon Valley for treatment, rather than have that member treating (or undergoing a surgical procedure) at another hospital or facility that may be within Aetna's contracted network.

29.     Defendants actually train the physician-owners and their respective staffs in practices aimed at identifying Aetna members with out-of-network benefit packages offered by Aetna. In fact, Defendants suggest that each physician-owner offer their respective employees incentives for identifying patients to be referred to Huntingdon Valley.

30.     In referring Aetna members to Huntingdon Valley, Defendants and physician-owners do not disclose to Aetna members that these physicians have an ownership interest in Huntingdon Valley. Nor do they disclose to Aetna members that Huntingdon Valley has no contract with Aetna.

31.     Defendants' objective in securing patients for Huntingdon Valley is to charge greatly inflated "facility fees" to Aetna, which fees are far higher than would be charged by a medical facility that is within Aetna's contracted medical provider network. Aetna has attached as Exhibit 1 a list of the claims submitted to Aetna from January 1, 2009 through September 25, 2013.

32.     In exchange for convincing Aetna members to undergo medical procedures at Huntingdon Valley, the physician-owners obtain kickback payments, in the form of direct payments to each individual physician's office.   Furthermore, the physician-owners, as limited partners, receive partnership payouts based on the financial performance of the facility.

33.     The kickback payments are payable to each physician office for each patient treated at Huntingdon Valley.  These sizeable payments far exceed the cost incurred by each physician-owner to identify which Aetna members have the kind of coverage that Defendants can exploit.

34.     To induce Aetna members to have procedures performed at Huntingdon Valley, Defendants and the physician-owners also agree to waive out-of-pocket payments that Aetna members would ordinarily be required to make, including the co-pays, co-insurance, and deductible payments.

35.     The waiver of sizable co-pays, co-insurance, and deductible payments is a significant economic inducement for the Aetna member in deciding to treat at Huntingdon Valley instead of at other facilities, such as a hospital within Aetna's contracted network.

36.     The waiver of these member payments, in turn, causes Aetna to pay far more than it otherwise would pay for the very same medical treatment.

37.     By interfering with Aetna's contracted network of medical care providers, and use of kickbacks to funnel Aetna members away from contracted medical facilities, Aetna estimates that Defendants have received nearly $17 million for services rendered to Aetna members, just since 2009.

38.     The difference in the amount charged by Huntingdon Valley, and the amount charged by a medical facility within Aetna's contracted network, for the same services, is highly

significant.  For example, in October 2011, an Aetna member arrived at one of the physician-owner's offices requiring foot surgery.  The physician-owner funneled the member to Huntingdon Valley, where he performed foot surgery on the member's left foot.  Aetna paid Huntingdon Valley nearly $88,000 for this procedure.  Just one month later, the same physician performed similar procedures for the same diagnosis on the member's right foot at a hospital within Aetna's contracted network.  Aetna paid the contracted hospital approximately $5,700.

39.     Given the importance of the kickback scheme to Huntingdon Valley's existence, Defendants closely monitor the rate at which physician-owners are performing surgical procedures at Huntingdon Valley, as opposed to having the same procedure done somewhere else.

40.     Defendants are believed to monitor how many Aetna members are referred by each physician-owner for treatment at Huntingdon Valley.

41.     If Defendants believe that a physician-owner is not adhering to the policies and practices involving referral of patients to Huntingdon Valley, Defendants intercede and remind the physician and their staff members that they must adhere to the policies established by Defendants.

42.     Defendants send their employees to these doctors' offices to remind them and their respective staffs of the Defendants' policies concerning referral of Aetna members to Huntingdon Valley, and as to financial benefits those doctors could enjoy by sending Aetna members to Huntingdon Valley.

43.     Further, Aetna believes that Aetna Medicare Advantage members have been treated at Huntingdon Valley.  These are members whose health benefits are funded using Medicare funds.  Upon information and belief, Defendants have not obtained a letter opinion

from the Office of the Inspector General as to its fee-splitting arrangements with physicians. This kickback arrangement is a potential violation of the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b.

**COUNT I**
**VIOLATION OF PENNSLVANIA'S ANTI-KICKBACK LAWS**
<u>**Aetna v. Defendants**</u>

44.    Aetna incorporates by reference all of the forgoing and subsequent paragraphs as if fully set forth herein.

45.    Aetna is an "insurer" within the meaning of 18 Pa. Cons. Stat. § 4117(a)(1).

46.    Defendants are each a "health care provider" within the meaning of 18 Pa. Cons. Stat. § 4117(b)(2).

47.    Defendants compensate the physician-owners, in the form of payments to each physician-owner's office, for recommending that Aetna members have medical procedures and treatment completed at Huntingdon Valley, as opposed to elsewhere, including at medical facilities under contract with Aetna. These payments include a portion of the inflated facility fee charged by Defendants for the use of Huntingdon Valley.

48.    Defendant Huntingdon Valley makes such payments for each Aetna member that receives medical treatment at Huntingdon Valley.

49.    Defendant Huntingdon Valley further offers financial inducements to Aetna members, in the form of waiver of co-pays, co-insurance, and deductibles to induce Aetna members to have their medical procedures completed at Huntingdon Valley.

50.    The distribution payments to the physician-owners and other referring physicians violate 18 Pa. Con. Stat. § 4117(b)(2).

51.     The waiver of member responsibility payments to Aetna members separately violates 18 Pa. Con. Stat. § 4117(b)(2).

52.     Aetna was injured as a result of Huntingdon Valley's violation of 18 Pa. Con. Stat. § 4117(b)(2), in that Aetna has been required to pay more for its members' medical care than it otherwise would have.

53.     These acts were related and continuous and therefore constituted a pattern of fraud under 18 Pa. Cons. Stat. § 4117(g).

## COUNT II
## CONSPIRACY
### Aetna v. Defendants

54.     Aetna incorporates by reference all of the forgoing and subsequent paragraphs as if fully set forth herein.

55.     Defendants conspired amongst themselves and with the physician-owners to funnel patients away from Aetna's contracted network of providers and facilities, through several unlawful acts, including through kickback payments that violate 18 Pa. Cons. Stat. § 4117(b).

56.     These kickback payments were essential to Defendants' scheme because they incentivized the physician-owners to funnel patients to Huntingdon Valley.

57.     These payments, along with the other wrongful conduct described herein, constitute overt acts done in pursuance of the common purpose of obtaining facility fee payments from Aetna for out-of-network services.

58.     Defendants' conduct is intended to harm Aetna, is accomplished through wrongful and illegal means, and is outrageous.

59.     As a result of this conduct, Aetna has suffered legal harm, in the form of payments made to Huntingdon Valley that (a) would not have been made but for Defendants'

12

unlawful conduct; and (b) far exceed payments Aetna would have made to in-network facilities if Defendants' had not employed the unlawful scheme of funneling patients away from in-network facilities.

## COUNT III
## INSURANCE FRAUD
### Aetna v. Huntingdon Valley and Foundation Management

60.     Aetna incorporates the forgoing and subsequent paragraphs as if fully set forth herein.

61.     Aetna is an "insurer" within the meaning of 18 Pa. Cons. Stat. §§ 4117(a) and 4117(l).

62.     Defendant Huntington Valley is a "person" within the meaning of 18 Pa. Cons. Stat. §§ 4117(a)(2) and 4117(l).

63.     Defendant Foundation Management is a "person" within the meaning of 18 Pa. Cons. Stat. § 4117(a)(2) and 4117(l).

64.     The insurance claim forms, bills, medical reports, and other records produced by Huntington Valley and Foundation Management in support of its claims for reimbursement are "statements" within the meaning of 18 Pa. Cons. Stat. § 4117(a) and 4117(l).

65.     Facility fees are submitted to Aetna on a standardized form known as a UB-04 claim form (or its electronic equivalent). This form requires the facility to provide Aetna with a significant amount of information, including procedure codes, dates of service, and total charges arising from the medical services. The facility submitting the UB-04 agrees that "[t]he submission of th[e] claim constitutes certification that the billing information as shown on the face [t]hereof is true, accurate and complete [and] [t]hat the submitter did not knowingly or

recklessly disregard or misrepresent or conceal material facts." The facility charge is not permitted to include any payment for physicians' services.

66.     Defendants Huntington Valley and Foundation Management acted in violation of 18 Pa. Cons. Stat. § 4117(a)(2) by knowingly presenting or causing to be presented to Aetna statements that contained false, incomplete, or misleading information concerning facts material to such insurance claims, including the following misleading statement.

67.     Huntingdon Valley's bills to Aetna, which were submitted on UB-04 claim form (or the electronic equivalent), included a false reporting of Huntingdon Valley's facility fees. These fees were inflated with sums of money that Huntingdon Valley was paying to the physician-owners as a kickback for sending patients to Huntingdon Valley. Huntingdon Valley did not identify that the putative "facility fee" included a concealed kickback to referring physicians.

68.     Huntingdon Valley's bills also failed to inform Aetna that Huntingdon Valley was waiving member responsibility payments, as means of financially inducing Aetna members to obtain medical treatment at Huntingdon Valley, rather than elsewhere. Because Huntingdon Valley concealed this material fact, Aetna did not learn that its members were not making required payments until long after Aetna paid Huntingdon Valley.

69.     Aetna members have yearly out-of-pocket limits. Once exceeded, Aetna is responsible for the entire payment. By waiving out-of-pocket expenses to the Aetna member without informing Aetna, Huntingdon Valley directly interferes with Aetna's ability to accurately monitor out-of-pocket payments by its members.

70.     These acts were related and continuous and therefore constituted a pattern of fraud under 18 Pa. Cons. Stat. § 4117(g).

71.     Aetna was injured as a result of Huntington Valley's and Foundation Management's conduct.

## COUNT IV
## INSURANCE FRAUD: AIDING AND ABETTING
### Aetna v. The Foundation Defendants

72.     Aetna incorporates the forgoing and subsequent paragraphs as if fully set forth at length herein.

73.     Aetna is an "insurer" within the meaning of 18 Pa. Cons. Stat. § 4117(a)(2) and 4117(l).

74.     The Foundation Defendants are each a "person" within the meaning of 18 Pa. Cons. Stat. §§ 4117(a) and § 4117(l).

75.     The Foundation Defendants assisted, aided, abetted, solicited and conspired with Huntingdon Valley to prepare statements made to Aetna that contained false, incomplete and misleading information, in violation of 18 Pa. Cons. Stat. § 4117(a)(2), including by: (a) setting policies and procedures through which Huntingdon Valley identified Aetna members; (b) waiving co-pays, co-insurance, and deductible payments to induce the Aetna member to treat at Huntingdon Valley; (c) establishing a kickback scheme to incentivize physicians to send patients to Huntingdon Valley; and (d) preparing or helping to prepare the bills that were ultimately submitted to Aetna for payment.

76.     These acts were related and continuous and therefore constituted a pattern of fraud under 18 Pa. Cons. Stat. § 4117(g).

77.     Aetna was injured as a result of Huntington Valley's conduct.

## COUNT V
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### Aetna v. Defendants

78.     Aetna incorporates by reference all of the forgoing and subsequent paragraphs as if fully set forth herein.

79.     The physician-owners all have contracts with Aetna.

80.     The contracts between the physician-owners and Aetna, inter alia, obligate the physician-owners not to refer patients to medical facilities that are not contracted with Aetna, when the medical procedures at issue could be performed at a medical facility that is contracted with Aetna.  Aetna's contracts with the physician-owners also require them to adhere to policies and procedures established by Aetna, that ensure access of Aetna members to quality medical care, while also helping to contain the rising costs of medical care.

81.     As described above, Defendants improperly and illegally induce the physician-owners to breach their contracts with Aetna.

82.     Defendants' conduct is not privileged or justified, is intended to harm Aetna, is accomplished through wrongful and illegal means, and is outrageous, justifying punitive damages.

83.     As a direct, proximate and reasonably foreseeable result of Defendants' conduct, Aetna has suffered damages.

## COUNT VI
## BREACH OF CONTRACT
### Aetna v. Huntingdon Valley

84.     Aetna incorporates by reference all of the forgoing and subsequent paragraphs as if full set forth herein.

85.     On or about December 31, 2011, Huntingdon Valley and MultiPlan, Inc. entered into an agreement, through which Huntingdon Valley became a contracted medical facility within a contracted network of medical care providers established by a third party, MultiPlan, Inc. (the "MultiPlan Agreement").   Some of the claims at issue in this case were processed and ultimately paid by Aetna pursuant to the terms of the MultiPlan Agreement.

86.     The MultiPlan Agreement is a valid and enforceable contract.

87.     Aetna is an express third-party beneficiary of the MultiPlan Agreement.

88.     As a third-party beneficiary, Aetna has the right to enforce the obligations of Huntingdon Valley under the terms of the MultiPlan Agreement.

89.     Huntingdon Valley has breached the terms of the MultiPlan Agreement, including its obligations of good faith and fair dealing by engaging in the conduct described above, including, inter alia, failing to charge Aetna the fees it typically charges other payors for services rendered at Huntingdon Valley and also by failing to collect all member responsibility payments, including all deductibles, co-insurance, co-pays and other such payments;

90.     As a direct, proximate and reasonably foreseeable result of Huntingdon Valley's breach of the MultiPlan Agreement, Aetna has suffered damages.

### COUNT VII
### UNJUST ENRICHMENT
### Aetna v. Defendants

91.     Aetna incorporates by reference all of the forgoing paragraphs as if fully set forth herein.

92.     The MultiPlan Agreement does not apply to many of the claims at issue in this case.  Aetna does not have an express contractual remedy for such claims.

93.     Under Pennsylvania law, in the absence of a contractual agreement, the provider of medical services is only entitled to a reasonable fee for rendering medical care.

94.     Defendants charge and receive from Aetna facility fees for use of Huntingdon Valley that exceed the reasonable facility fee charged by other facilities in the relevant community.

95.     Defendants have retained the benefit of these unreasonable charges by retaining the monies paid by Aetna, in excess of what is reasonable in the relevant community.

96.     Defendants' retention of these monies is thus unjust and inequitable.  Moreover, as described above, these funds were acquired through illegal conduct, which has harmed Aetna, and it is therefore also unjust and inequitable for Defendants to retain these funds.

## COUNT VIII
## EQUITABLE RELIEF
### Aetna v. Defendants

97.     Aetna incorporates by reference all of the foregoing paragraphs as if fully set forth below.

98.     Defendants are engaged in practices that violate Pennsylvania law and other applicable standards of conduct concerning the billing practices of medical providers and the disclosure of material information to patients.

99.     Aetna seeks injunctive relief to compel Defendants to stop the unlawful practices described in this Complaint, including the payment of kickbacks, the waiver of member responsibility payments used to induce Aetna members to treat at Huntingdon Valley, and material non-disclosures to Aetna members.  Aetna also requests that the Court require Defendants to fully notify and apprise all patients, including Aetna's members, when their

referring physicians have an ownership interest in the Defendants' facilities and offer Aetna's
members other alternative in network facilities where they can be treated.

**COUNT IX**
**EQUITABLE ACCOUNTING**
**Aetna v. Defendants**

100.    Aetna incorporates by reference all of the foregoing and subsequent paragraphs as
if fully set forth below.

101.    Aetna also seeks an equitable accounting under Pennsylvania law.   This case
involves numerous allegations of fraud and misrepresentation relating to Defendants' billing
practices, including the payments and incentives offered to physicians and patients who use
Huntingdon Valley.  The nature and complexity of the scheme engaged in by Defendants leaves
Aetna with no adequate remedy or process to fully assess the scope, magnitude and impact of
Defendants' illegal business practices.

102.    Aetna is therefore entitled to an accounting as to: (a) the identify of each Aetna
member for whom Huntingdon Valley waived in full or in part required out-of-pocket payments;
(b) an accounting of all payments, remuneration, and other value provided to physicians as an
incentive for those physicians using Huntingdon Valley to perform medical procedures on their
patients; and (c) an accounting of the monetary benefit conferred on Defendants as a result of
their improper and illegal billing practices.

**PRAYER FOR RELIEF**

WHEREFORE, Aetna respectfully requests that this Court enter judgment in its favor
and against Defendants and award Aetna damages in excess of $150,000, including attorneys'
fees, costs, treble damages, punitive damages, investigation expenses, interest on all sums owed,
an accounting, and all such other legal and equitable relief.  Aetna further requests that this Court

19

enjoin Defendants from continuing the illegal business practices detailed throughout this Amended Complaint.

## JURY DEMAND

Aetna hereby respectfully demands a jury trial pursuant to the Seventh Amendment to the United States Constitution and Federal Rule of Civil Procedure 38(a).

Respectfully submitted,

John M. Elliott
James C. Crumlish, III
John P. Elliott
James J. McCarrie, II
Elliott Greenleaf & Siedzikowski, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
(215) 977-1000

Dated: December 2, 2013

## CERTIFICATE OF SERVICE

I, John M. Elliott, Esquire, hereby certify that on this date, I caused a true and correct copy of the foregoing to be filed electronically with the Court where it is available to be viewed and constitutes service pursuant to the Local Rules of Civil Procedure.

John M. Elliott

Dated: December 2, 2013

# EXHIBIT 1

| START_DOS | PAID_PROVIDER_ID | BILLED_AMOUNT | PAID_AMOUNT | CLAIM_ID | PROVIDER_TIN | YEAR |
|---|---|---|---|---|---|---|
| 1/2/2009 | 341270002 | $ 22,881.00 | $ 340.00 | 090126E2127100 | 680499459 | 2009 |
| 1/16/2009 | 341270002 | $ 22,881.00 | $ - | 090129157O3800 | 680499459 | 2009 |
| 1/16/2009 | 341270002 | $ - | $ - | 09013016626600 | 680499459 | 2009 |
| 1/16/2009 | 341270002 | $ - | $ - | 09013023373200 | 680499459 | 2009 |
| 1/6/2009 | 341270002 | $ 13,352.00 | $ 5,300.00 | 090202E2528600 | 680499459 | 2009 |
| 1/6/2009 | 341270002 | $ 350.00 | $ - | 090202E2528600 | 680499459 | 2009 |
| 1/16/2009 | 341270002 | $ - | $ - | 090202E6392700 | 680499459 | 2009 |
| 1/12/2009 | 341270002 | $ 1,932.00 | $ 919.20 | 090206E8957000 | 680499459 | 2009 |
| 1/16/2009 | 341270002 | $ - | $ - | 09020907081600 | 680499459 | 2009 |
| 1/21/2009 | 341270002 | $ 16,577.00 | $ 6,859.65 | 090209E3414500 | 680499459 | 2009 |
| 1/21/2009 | 341270002 | $ 14,404.00 | $ 435.78 | 090209E4217500 | 680499459 | 2009 |
| 1/21/2009 | 341270002 | $ 16,577.00 | $ 10,432.75 | 090209E5011900 | 680499459 | 2009 |
| 1/28/2009 | 341270002 | $ 16,577.00 | $ 9,746.20 | 090211E7984600 | 680499459 | 2009 |
| 1/28/2009 | 341270002 | $ 16,577.00 | $ 10,432.75 | 090211E8998200 | 680499459 | 2009 |
| 1/5/2009 | 341270002 | $ 13,352.00 | $ 6,799.80 | 09021642134900 | 680499459 | 2009 |
| 1/5/2009 | 341270002 | $ 350.00 | $ 183.75 | 090216421349OO | 680499459 | 2009 |
| 1/12/2009 | 341270002 | $ 27,747.00 | $ 14,210.25 | 09021653386000 | 680499459 | 2009 |
| 1/12/2009 | 341270002 | $ 1,040.00 | $ 780.00 | 09021653386000 | 680499459 | 2009 |
| 1/12/2009 | 341270002 | $ (27,747.00) | $ (14,210.25) | 09021653386001 | 680499459 | 2009 |
| 1/12/2009 | 341270002 | $ (1,040.00) | $ (780.00) | 09021653386001 | 680499459 | 2009 |
| 2/6/2009 | 341270002 | $ 15,382.00 | $ 685.78 | 09022E3456900 | 680499459 | 2009 |
| 2/3/2009 | 341270002 | $ 23,488.00 | $ 9.10 | 09022E4221600 | 680499459 | 2009 |
| 2/4/2009 | 341270002 | $ 16,577.00 | $ - | 090225E7763100 | 680499459 | 2009 |
| 2/13/2009 | 341270002 | $ 15,382.00 | $ 229.60 | 090225E9990700 | 680499459 | 2009 |
| 2/13/2009 | 341270002 | $ 17,945.00 | $ 234.80 | 090225E9990700 | 680499459 | 2009 |
| 2/13/2009 | 341270002 | $ 20,509.00 | $ 117.40 | 090225E9990700 | 680499459 | 2009 |
| 2/4/2009 | 341270002 | $ 16,577.00 | $ 8,967.75 | 09022617094100 | 680499459 | 2009 |
| 2/4/2009 | 341270002 | $ 16,577.00 | $ 9,706.20 | 09022617140100 | 680499459 | 2009 |
| 1/5/2009 | 341270002 | $ - | $ - | 09022805214800 | 680499459 | 2009 |
| 1/5/2009 | 341270002 | $ - | $ - | 09022805214800 | 680499459 | 2009 |
| 1/6/2009 | 341270002 | $ 350.00 | $ - | 09022805215100 | 680499459 | 2009 |
| 1/6/2009 | 341270002 | $ - | $ - | 09022805215100 | 680499459 | 2009 |
| 1/2/2009 | 341270002 | $ - | $ - | 09022805239200 | 680499459 | 2009 |
| 1/6/2009 | 341270002 | $ - | $ - | 090228M5423500 | 680499459 | 2009 |
| 1/6/2009 | 341270002 | $ - | $ - | 090228M5423500 | 680499459 | 2009 |
| 1/16/2009 | 341270002 | $ - | $ - | 090228M5423900 | 680499459 | 2009 |

| START_DOS | PAID_PROVIDER_ID | BILLED_AMOUNT | PAID_AMOUNT | CLAIM_ID | PROVIDER_TIN | YEAR |
|---|---|---|---|---|---|---|
| 1/5/2009 | 341270002 | $ - | $ - | 0903010516600 | 680499459 | 2009 |
| 1/5/2009 | 341270002 | $ - | $ - | 0903010516600 | 680499459 | 2009 |
| 1/6/2009 | 341270002 | $ - | $ - | 0903010516300 | 680499459 | 2009 |
| 1/6/2009 | 341270002 | $ - | $ - | 0903010516300 | 680499459 | 2009 |
| 1/2/2009 | 341270002 | $ - | $ - | 0903010516400 | 680499459 | 2009 |
| 1/16/2009 | 341270002 | $ - | $ - | 0903010516800 | 680499459 | 2009 |
| 2/4/2009 | 341270002 | $ 16,577.00 | $ - | 0903022193340 | 680499459 | 2009 |
| 2/4/2009 | 341270002 | $ 16,577.00 | $ 176.40 | 0903022193350 | 680499459 | 2009 |
| 1/8/2009 | 341270002 | $ 13,352.00 | $ - | 0903022276210 | 680499459 | 2009 |
| 1/8/2009 | 341270002 | $ 350.00 | $ - | 0903022276210 | 680499459 | 2009 |
| 2/17/2009 | 341270002 | $ 21,220.00 | $ 15,740.00 | 090306E452390 | 680499459 | 2009 |
| 2/17/2009 | 341270002 | $ 350.00 | $ 262.50 | 090306E452390 | 680499459 | 2009 |
| 2/18/2009 | 341270002 | $ 19,440.00 | $ 12,580.00 | 090310E678480 | 680499459 | 2009 |
| 2/25/2009 | 341270002 | $ 16,577.00 | $ 9,932.75 | 090310E678490 | 680499459 | 2009 |
| 2/20/2009 | 341270002 | $ 22,881.00 | $ 13,860.75 | 090310E678500 | 680499459 | 2009 |
| 3/9/2009 | 341270002 | $ 350.00 | $ 50.00 | 090327E145620 | 680499459 | 2009 |
| 3/9/2009 | 341270002 | $ 21,220.00 | $ 1,011.92 | 090327E145620 | 680499459 | 2009 |
| 3/9/2009 | 341270002 | $ - | $ - | 090327E922600 | 680499459 | 2009 |
| 3/9/2009 | 341270002 | $ 24,962.00 | $ 15,421.50 | 090401E104070 | 680499459 | 2009 |
| 3/9/2009 | 341270002 | $ - | $ - | 090401E459170 | 680499459 | 2009 |
| 3/9/2009 | 341270002 | $ - | $ - | 090401E459170 | 680499459 | 2009 |
| 3/12/2009 | 341270002 | $ 3,442.00 | $ 1,457.05 | 090401635630 | 680499459 | 2009 |
| 3/23/2009 | 341270002 | $ 350.00 | $ - | 090402E943340 | 680499459 | 2009 |
| 3/23/2009 | 341270002 | $ 21,220.00 | $ 811.92 | 090402E943340 | 680499459 | 2009 |
| 3/9/2009 | 341270002 | $ - | $ - | 090403221096 | 680499459 | 2009 |
| 3/9/2009 | 341270002 | $ - | $ - | 090403221096 | 680499459 | 2009 |
| 3/9/2009 | 341270002 | $ - | $ - | 090403230973 | 680499459 | 2009 |
| 3/24/2009 | 341270002 | $ 4,884.00 | $ 103.48 | 090406E228080 | 680499459 | 2009 |
| 3/24/2009 | 341270002 | $ 21,220.00 | $ 13,915.00 | 090406E322180 | 680499459 | 2009 |
| 3/24/2009 | 341270002 | $ 350.00 | $ 262.50 | 090406E322180 | 680499459 | 2009 |
| 3/30/2009 | 341270002 | $ 350.00 | $ - | 090406E322190 | 680499459 | 2009 |
| 3/30/2009 | 341270002 | $ 21,220.00 | $ 649.53 | 090406E322190 | 680499459 | 2009 |
| 3/25/2009 | 341270002 | $ 16,577.00 | $ 293.50 | 090406E416850 | 680499459 | 2009 |
| 3/25/2009 | 341270002 | $ 22,881.00 | $ 13,860.75 | 090406E416860 | 680499459 | 2009 |
| 3/13/2009 | 341270002 | $ 22,881.00 | $ 17,160.75 | 090406E416860 | 680499459 | 2009 |
| 3/25/2009 | 341270002 | $ 20,810.00 | $ 12,307.50 | 090406E511560 | 680499459 | 2009 |

| START_DOS | PAID_PROVIDER_ID | BILLED_AMOUNT | PAID_AMOUNT | CLAIM_ID | PROVIDER_TIN | YEAR |
|---|---|---|---|---|---|---|
| 3/25/2009 | 341270002 | $ 24,962.00 | $ 18,721.50 | 090406E5115600 | 680499459 | 2009 |
| 3/25/2009 | 341270002 | $ 24,962.00 | $ 18,721.50 | 090406E5115600 | 680499459 | 2009 |
| 3/25/2009 | 341270002 | $ 24,962.00 | $ 18,721.50 | 090406E5115600 | 680499459 | 2009 |
| 3/25/2009 | 341270002 | $ 16,577.00 | $ 5,716.38 | 090406E6059500 | 680499459 | 2009 |
| 1/29/2009 | 341270002 | $ 3,586.00 | $ - | 09040718567100 | 680499459 | 2009 |
| 3/16/2009 | 341270002 | $ 253.00 | $ - | 09041017082100 | 680499459 | 2009 |
| 3/16/2009 | 341270002 | $ 19,532.00 | $ 992.47 | 09041017082100 | 680499459 | 2009 |
| 2/12/2009 | 341270002 | $ - | $ 36.76 | 09041416057200 | 680499459 | 2009 |
| 2/12/2009 | 341270002 | $ 20,509.00 | $ 10,417.23 | 09041416057200 | 680499459 | 2009 |
| 2/12/2009 | 341270002 | $ 1,452.54 | $ 762.59 | 09041416057200 | 680499459 | 2009 |
| 2/9/2009 | 341270002 | $ 21,220.00 | $ - | 09041418716600 | 680499459 | 2009 |
| 2/9/2009 | 341270002 | $ 350.00 | $ - | 09041418716600 | 680499459 | 2009 |
| 2/19/2009 | 341270002 | $ 24,962.00 | $ 15,471.05 | 09041516555000 | 680499459 | 2009 |
| 2/19/2009 | 341270002 | $ 24,962.00 | $ 18,721.50 | 09041516555000 | 680499459 | 2009 |
| 2/19/2009 | 341270002 | $ 2,393.60 | $ 1,795.20 | 09041516555000 | 680499459 | 2009 |
| 4/9/2009 | 341270002 | $ 10,269.00 | $ 295.96 | 09041611716600 | 680499459 | 2009 |
| 4/9/2009 | 341270002 | $ 10,269.00 | $ 295.96 | 09041E5621500 | 680499459 | 2009 |
| 4/8/2009 | 341270002 | $ 16,577.00 | $ 8,352.93 | 09041E8388600 | 680499459 | 2009 |
| 1/27/2009 | 341270002 | $ 19,300.00 | $ 12,475.00 | 09042011716600 | 680499459 | 2009 |
| 1/8/2009 | 341270002 | $ - | $ - | 09042111808300 | 680499459 | 2009 |
| 4/20/2009 | 341270002 | $ 19,532.00 | $ 11,149.00 | 090424E1396000 | 680499459 | 2009 |
| 4/16/2009 | 341270002 | $ 22,881.00 | $ 153.40 | 090507E8368600 | 680499459 | 2009 |
| 4/16/2009 | 341270002 | $ 22,881.00 | $ 755.89 | 090507E8368600 | 680499459 | 2009 |
| 5/4/2009 | 341270002 | $ 350.00 | $ 50.00 | 090515E7246101 | 680499459 | 2009 |
| 5/4/2009 | 341270002 | $ 21,220.00 | $ 1,011.92 | 090515E7246101 | 680499459 | 2009 |
| 5/15/2009 | 341270002 | $ 22,881.00 | $ 910.66 | 090526E1782600 | 680499459 | 2009 |
| 5/27/2009 | 341270002 | $ 16,577.00 | $ 9,932.75 | 090605E4251200 | 680499459 | 2009 |
| 5/29/2009 | 341270002 | $ 3,442.00 | $ 1,985.20 | 090605E5179000 | 680499459 | 2009 |
| 5/27/2009 | 341270002 | $ 16,577.00 | $ 60.89 | 090605E7032100 | 680499459 | 2009 |
| 6/1/2009 | 341270002 | $ 350.00 | $ 50.00 | 090617E7335700 | 680499459 | 2009 |
| 6/1/2009 | 341270002 | $ 21,220.00 | $ 1,011.92 | 090617E7335700 | 680499459 | 2009 |
| 5/29/2009 | 341270002 | $ 22,881.00 | $ 13,859.75 | 090617E8431100 | 680499459 | 2009 |
| 5/29/2009 | 341270002 | $ 22,881.00 | $ 17,160.75 | 090617E8431100 | 680499459 | 2009 |
| 6/11/2009 | 341270002 | $ 350.00 | $ 50.00 | 090625E5732000 | 680499459 | 2009 |
| 6/11/2009 | 341270002 | $ 21,220.00 | $ 761.92 | 090625E5732000 | 680499459 | 2009 |
| 3/5/2009 | 341270002 | $ 5,706.00 | $ 168.38 | 090629289959900 | 680499459 | 2009 |
| 6/22/2009 | 341270002 | $ 350.00 | $ - | 090701E4335400 | 680499459 | 2009 |