# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AETNA LIFE INS. CO.<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>HUNTINGTON VALLEY SURGERY CTR.;<br>FOUND. SURGERY AFFILIATES, LLC; and<br>FOUND. SURGERY MGMT., LLC<br><br>　　　　　Defendants. | 2:13-cv-3101-WY |

## MEMORANDUM

YOHN, J.                                                                                                          August 19, 2014

Aetna Life Insurance Company ("Aetna") brings this lawsuit against Huntington Valley Surgery Center ("Huntington Valley"); Foundation Surgery Affiliates, LLC ("FSA"); and Foundation Surgery Management, LLC ("FSM") related to Huntington Valley's patient referral and billing practices. Presently before me is the defendants' motion to dismiss portions of Aetna's amended complaint, or, in the alternative, for a more definite statement. For the reasons discussed below, I will dismiss Aetna's claims for unjust enrichment, and otherwise deny the motion.

## I.　　Background[1]

Huntington Valley is a physician-owned surgical facility located in Huntington Valley, Pennsylvania. FSM and FSA are Oklahoma-based companies alleged to be in the surgical facility management business, through which they manage, operate, and set policy for Huntington Valley.

---

[1] This factual background represents the plaintiff's well-pleaded allegations in its amended complaint. At this stage of litigation, I construe the plaintiff's allegations in the light most favorable to the plaintiff. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

1

Aetna is a Connecticut-based health insurance provider and plan administrator. Huntington Valley has no formal "in-network" relationship with Aetna, but Huntington Valley's patients include persons who have Aetna-provided or administered insurance. Aetna pays portions of the Huntington Valley bills incurred by those persons pursuant to the terms of the person's health insurance policy.

On June 5, 2013, Aetna filed suit against Huntington Valley relating to Huntington Valley's referral and billing practices. Huntington Valley filed a motion to dismiss the complaint on July 29, 2013, and, on October 31, 2013—after counsel for Aetna indicated at oral argument that it intended to pursue different theories of liability than those stated in the complaint—I dismissed the complaint without prejudice to Aetna's ability to file an amended complaint.

On December 2, 2013, Aetna filed the amended complaint that is the subject of the instant motion. The amended complaint alleges that Huntington Valley's physician-owners also are on the staff of medical facilities that are within Aetna's network, and that these physicians have a practice of identifying high-value patients at in-network facilities and targeting them for referral to Huntington Valley. These physician-owners then promise the high-value patients—as part of an effort to induce them to choose to have procedures performed at Huntington Valley—that Huntington Valley will waive traditional out-of-network patient payment obligations such as co-pays and balance bills. According to the amended complaint, this is all pursuant to a profit-maximizing scheme orchestrated by FSA and FSM whereby the physician-owners receive kickbacks from Huntington Valley for high-value referrals. Aetna also alleges that Huntington Valley sent Aetna unreasonable bills for the beneficiaries' medical care, and that these bills contained no mention of patient or physician referral inducements. Based on these allegations, the

amended complaint asserts claims for: (1) violation of 18 Pa. C.S.A § 4117(b)(2),[2] against all defendants; (2) conspiracy to act in violation of 18 Pa. C.S.A. § 4117(b)(2), against all defendants; (3) insurance fraud in violation of 18 Pa. C.S.A. § 4117(a)(2), against all defendants; (4) tortious interference with contract, against all defendants; (5) breach of contract, against Huntington Valley; and (6) unjust enrichment, against all defendants.

## II.     The Instant Motion

In their motion, the defendants seek dismissal of myriad portions of the amended complaint based on the following contentions: (1) that FSA is not subject to the personal jurisdiction of the court; (2) that Aetna has no standing to bring claims related to payments on behalf of group plans that are Aetna-administered but self-insured; (3) that there can be no liability for FSA and FSM under 18 Pa. C.S.A. § 4117(b)(2) because they are not "health care providers" within the meaning of the statute; (4) that Aetna's claims under 18 Pa. C.S.A § 4117 may not be brought related to payments on behalf of health plans subject to the requirements of ERISA because those claims are preempted by ERISA; (5) that the amended complaint fails to state an unjust enrichment claim.

The defendants also seek a more definite statement from Aetna based on the contention that the factual and legal bases of the claims in the amended complaint are not sufficiently clear.

### A.     Legal Standards

The defendants' motion arises under Rule 12(b)(2), Rule 12(b)(6), and Rule 12(e).

---

[2] 18 Pa. C.S.A. § 4117(b)(2) states in relevant part:
> With respect to an insurance benefit or claim covered by this section, a health care provider may not compensate or give anything of value to a person to recommend or secure the provider's service to or employment by a patient or as a reward for having made a recommendation resulting in the provider's service to or employment by a patient; except that the provider may pay the reasonable cost of advertising or written communication as permitted by rules of professional conduct.

3

A motion under Rule 12(b)(2) challenges the court's exercise of personal jurisdiction over the defendant. A district court may assert personal jurisdiction over a defendant to the extent permitted under the law of the state in which the court sits. *See* Fed. R. Civ. P. 4(k). Pennsylvania courts exercise personal jurisdiction over nonresident defendants "to the fullest extent allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b). Hence, the court may exercise personal jurisdiction over a defendant as long as it has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). These "minimum contacts must have a basis in some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987). "The nature of these contacts must be such that the defendant should be reasonably able to anticipate being haled into court in the forum state." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).

When a defendant makes a motion under Rule 12(b)(2), the plaintiff bears the burden of "prov[ing] . . . facts sufficient to establish personal jurisdiction." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). Where, as here, the court has not held an evidentiary hearing on the issue, "the plaintiff need only establish a prima facie case of personal jurisdiction" to survive dismissal, and the court must accept the plaintiff's allegation as true and resolve factual disputes in its favor. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Still, the plaintiff must respond to the motion to dismiss with "actual proofs"—such as "sworn affidavits or other competent evidence"—not "mere allegations." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). In determining whether a complaint is sufficient, a court takes note of the elements the plaintiff must plead to state a claim, and, accepting all factual allegations in the complaint as true, determine whether the plaintiff's well-pleaded factual allegations plausibly give rise to an entitlement for relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). While a short and simple statement of entitlement to relief is all that is required to state a claim under Rule 8(a), vague or conclusory statements will not suffice: a claim is only plausible where the complaint pleads sufficient factual content to raise the right to relief above the speculative level. *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007). Any reasonable inferences that may be drawn from the complaint must be drawn in the light most favorable to the plaintiff. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

Under Rule 12(e), "a party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

### B. Personal Jurisdiction and FSA

The defendants seek dismissal of FSA from the case on the basis that FSA lacks the minimum contacts necessary to be subject to the personal jurisdiction of the court.

In their motion, the defendants contend that there is no personal jurisdiction over FSA because, allegedly, FSA is a mere holding company with no direct contacts with Pennsylvania, and any connection that its subsidiary FSM may have with Pennsylvania is not attributable to FSA. In response, Aetna offers a series of proofs tending to show that FSA is not merely an owner of companies that participate in the Pennsylvania health care market, but is rather a direct

and active participant in the Pennsylvania health care market itself. Aetna's proofs include: (1) an investor-targeted document from the website of FSA's parent company—Graymark Healthcare, Inc.—stating that "Foundation Surgery Affiliates, LLC operates a chain of ambulatory surgery center facilities in New Jersey, Ohio, Oklahoma, Pennsylvania, and Texas;" (2) an investor-targeted slide-deck from "Foundation Health Care, Inc." stating that "Foundation Services Affiliates" is an "industry leading [ambulatory surgery center] management and development company" whose functions include "partner[ing] with physicians," taking on "minority ownership investments," and "create[ing] outstanding patient experience[s];" (3) a form 8-K filed by Graymark Healthcare, Inc. stating that "FSA, FSHA, and their subsidiaries employed approximately 1,330 persons . . . approximately 90 [of which] are corporate employees, primarily based at the FSA and FSHA headquarters in Oklahoma City;" (4) a screenshot from the Foundation Health Care website's job postings page advertising for a position with "Foundation Surgery Affiliates (Corporate)" in Oklahoma City, OK; (5) a screenshot from the LinkedIn page of Robert Puglisi stating that from 2003 to 2007 he held the position of "Administrator" with "Foundation Surgery Affiliates," through which he was "[r]esponsible for the daily operations of the Huntington Valley Surgery Center;" and (6) numerous emails relating to the day-to-day management and/or strategy of Huntington Valley from persons with "FSA.mail" domain addresses and signature blocks identifying them as having positions with FSA.

  The defendants do not dispute the authenticity of any of these documents. The only rebuttal the defendants offer is their unsubstantiated contention that, although numerous persons have titles suggesting they are employees of FSA, they are in fact employees of FSM. At the present stage, factual disputes arising from Aetna's offers of proof are resolved in favor of the plaintiff, *see Miller Yacht Sales, Inc.*, 384 F.3d at 97, and these proofs indeed tend to show that

FSA has "purposefully avail[ed] itself of the privilege of conducting activities within [Pennsylvania], thus invoking the protection and benefits of its laws." *Asahi Metal Indus. Co.*, 480 U.S. at 109. As there is no contention that maintaining the suit against FSA otherwise "offends traditional notions of fair play and substantial justice," *see Int'l Shoe Co.*, 326 U.S. at 316, Aetna has carried its burden with respect to the court's personal jurisdiction over FSA. *See Miller Yacht Sales, Inc.*, 384 F.3d at 97.

### C. Issues Arising from Aetna-Administered, Self-Funded Plans

The defendants next contend that, to the extent Aetna's claims are based on losses to health insurance plans that are Aetna-administered but self-funded, Aetna lacks standing. Even if there is standing, the defendants contend, there is no private cause of action for such plans under 18 Pa. C.S.A. § 4117.

The constitutional requirement of standing contains three elements: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). To show standing "[a]t the pleading stage, [however], general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561. To this effect, Aetna points in its response to paragraph 16 of the amended complaint, which states:

> Aetna provides [health insurance] benefits by offering insurance through plans offered by employers, or through insurance purchased directly by individuals. Aetna also offers administrative services to health plans that are self-funded by employers or other groups. In addition to the harm caused to Aetna directly, employers and other plan sponsors are also harmed by the illegal business practices described in this Amended Complaint.

According to Aetna, its statement in the amended complaint that it was directly harmed by the defendants' conduct constitutes a general allegation that includes alleged harms to Aetna from payments to Huntington Valley relating to self-funded plans. This is a plausible construction of paragraph 16, and, at this stage of litigation, I must construe the plaintiff's allegations in the light most favorable to the plaintiff. *See Buck v. Hampton Twp. Sch. Dist*., 452 F.3d 256, 260 (3d Cir. 2006). Because this is all Aetna must plead to survive a standing challenge at the motion to dismiss stage, *see Lujan*, 504 U.S. at 561, I will not trim Aetna's claims on the basis of standing at this stage, although it is certainly subject to further review after discovery on this issue.

As to the cause of action under § 4117, the defendants' argument—which is stated entirely in a footnote and contains no reference to caselaw—is that the private right of action under § 4117 is limited to insurers, that the self-funded plans are not insurers, and that Aetna is therefore unauthorized to sue under § 4117 regarding payments made on behalf of self-funded plans. This argument is unavailing. Irrespective of whether the self-funded plans are themselves "insurers" within the meaning of § 4117, the plaintiff in this case is Aetna, and there is no dispute that Aetna is an insurer within the meaning of § 4117.[3] [4]

### D.   Applicability of 18 Pa. C.S.A. § 4117(b)(2) to FSA and FSM

According to the defendants, Aetna's claims in Count I under § 4117(b)(2) must fail as to FSA and FSM for two independent reasons.

First, the defendants contend that neither FSA nor FSM is a "health care provider" within the meaning of § 4117(b)(2), which authorizes suits against "health care providers" only. In support of their position, the defendants say the amended complaint alleges that FSA and FSM

---

[3] If the defendants mean to suggest that Aetna is not acting as an insurer within the meaning of § 4117 when it administers self-funded plans, they do not say so in their motion, nor do they offer support for such a proposition.

[4] Another interesting argument not raised by the parties is whether Aetna is an "insurer *damaged*" (emphasis added) with respect to self-funded plans as required to institute a civil action under § 4117(g) of the statute.

8

play "back office or administrative functions" at Huntington Valley, and that, because these alleged activities would not "require [FSA or FSM] to be licensed or certified to provide health care services to patients[,] it is thus manifest that neither entity is a health care provider for purposes of § 4117(b)(2)." This is unavailing. For one, the defendants are unpersuasive in their characterization of the amended complaint, which alleges that "FSA controls, manages, and operates . . . Huntington Valley both directly and through FSM;" that FSA and FSM direct and supervise Huntington Valley's "Administrator/Chief Executive Officer;" and that "FSA and FSM retain an equity interest in . . . Huntington Valley." The suggestion that these amount to allegations of a back office role for FSA and FSM in Huntington Valley—as if they were billing companies working on contract—carries no water. Rather, FSA and FSM are alleged to control, direct, own in part, and for all intents and purposes manage Huntington Valley. And to the extent that Huntington Valley is a "health care provider" within the meaning of § 4117(b)(2), it is difficult to see how a company that controls it and partially owns it is not a "health care provider" within the meaning of § 4117(b)(2) as well. *Cf.* 18 Pa. C.S.A. § 105 ("The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved."). The defendants point to no contrary authority; nor do the defendants point to any caselaw or legislative history in support of their position that an entity is not a "health care provider" within the meaning of § 4117(b)(2) unless it would be required to be licensed or certified to provide health care services.

Second, the defendants contend the claims must fail because, while § 4117(b)(2) prohibits health care providers from "compensating or giv[ing] anything of value" in relation to patient referrals, the amended complaint does not allege that FSA or FSM "paid anything to anybody."

Because the amended complaint alleges kickback payments made by Huntington Valley only, the defendants say, § 4117(b)(2) has no application to the conduct of FSA and FSM as a matter of law. This contention is another that the defendants do not support with legal authority, and, while it is true that the amended complaint alleges the kickback payments were made by Huntington Valley, it also alleges that FSM and FSA control and operate Huntington Valley and "establish[ed] . . . policies to facilitate the illegal kickback scheme[.]" In the absence of authority supporting the defendant's position, I cannot say that the amended complaint fails to state a claim under § 4117(b)(2).

### E.     ERISA Preemption and 18 Pa. C.S.A § 4117

The defendants next contend that Counts I, II, III, and IV against all defendants should be dismissed because, as to any payments made by Aetna on behalf of employee benefits plans subject to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, Aetna's claims under 18 Pa. C.S.A § 4117 are conflict preempted and must be dismissed accordingly.

Under the doctrine of conflict preemption, a state law may be preempted to the extent that it conflicts with federal law. *Barber v. Unum Life Ins. Co. of America*, 383 F.3d 134, 138 (3d Cir. 2004). In the ERISA context, a state law cause of action may be conflict preempted by ERISA's civil enforcement scheme, ERISA § 502(a), 29 U.S.C. § 1132(a), insofar as it duplicates, supplements, or supplants its remedies. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). As a result, "[s]tate law causes of action that are within the scope of § 502(a) are completely preempted." *Pascack Valley Hosp., Inc. v. Local 464A UFW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). The test provided by the Third Circuit is that a state law cause of action is preempted by ERISA "only if (1) the [plaintiff] could have brought its [state law] claim

under § 502(a), and (2) no other legal duty supports the [plaintiff's claim]." *Pascack Valley Hosp., Inc.*, 388 F.3d at 400.

First, the defendants concede in their brief that to determine which arrangements are subject to ERISA and which are not, they must review the plans themselves. They have not yet done so; therefore, the motion is premature as at best it will apply to only an undefined portion of the claims.

Second, "Section 502(a) of ERISA . . . only permits actions by beneficiaries, participants, or fiduciaries of a plan." *Temple Univ. Children's Med. Ctr. v. Grp. Health, Inc.*, 413 F. Supp. 2d 530, 536 (E.D. Pa. 2006); *see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 27 (1983) ("ERISA carefully enumerates the parties entitled to seek relief under § 502."). Participants and beneficiaries of ERISA plans are employees and other persons entitled to benefits from an employee benefits plan. 29 U.S.C. § 1002(7)-(8). Meanwhile, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for [compensation] . . . or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of a plan." 29 U.S.C. § 1002(21)(A).[5]

As an insurance company and not a natural person, Aetna is plainly neither a participant nor a beneficiary of an ERISA plan. *See* 29 U.S.C. § 1002(7)-(8). The defendants do contend that Aetna is an ERISA fiduciary with respect to payments made on behalf of health insurance plans, but they make no reference to the definition of a fiduciary provided by ERISA. Rather, they

---

[5] Aetna is a fiduciary with reference to the plans it enters into or manages with its customers. There is no plan or agreement between Aetna and any of the defendants.

11

merely state that "to the extent Aetna brings any claim on behalf of an ERISA plan it acts as a fiduciary," a position that they support solely with reference to *Martin v. Feilen*, 965 F.2d 660 (8th Cir. 1992), an inapposite case addressing the responsibility of an ERISA fiduciary to oppose an employer's financial mismanagement of the company. This is far from sufficient for me to conclude that Aetna could have pursued ERISA claims over the facts alleged in the amended complaint, and I therefore cannot find on the basis of this argument that ERISA preempts any portion of Aetna's claims under § 4117. *See Pascack Valley Hosp., Inc.*, 388 F.3d at 400. Again, a renewed look at this issue may be in order once some discovery elucidates the actions of the parties.

      F.      **Unjust Enrichment and Failure to State a Claim**

The defendants next contend that Aetna fails to state a claim for unjust enrichment.[6] In Pennsylvania, "unjust enrichment is the retention of a benefit conferred by another, without offering compensation, in circumstances where compensation is reasonably expected, and for which the beneficiary must make restitution." *Roethlein v. Portnoff Law Associates, Ltd.*, 81 A.3d 816, 825 n.8 (Pa. 2013); *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 531 n. 7 (Pa. 2010) (same) (citing Black's Law Dictionary (8th ed. 2004)). In support of its unjust enrichment claim, Aetna alleges in its amended complaint that (1) the defendants charge and receive from Aetna facility fees for use of Huntington Valley that exceed the reasonable facility fee charged by other facilities in the relevant community; (2) the defendants have retained the benefit of these unreasonable charges by retaining the moneys paid by Aetna, in excess of what is

---

[6] In addition to arguing that Aetna fails to state a claim with its unjust enrichment claim, the defendants further contend that this issue was already decided in connection with the motion to dismiss the complaint. When I dismissed the complaint without prejudice, I did not do so on the merits, but rather solely on the basis that counsel for Aetna stated at oral argument that Aetna intended to pursue different theories of liability than those set forth in the complaint. Accordingly, there are no previous decisions having preclusive effect as to Aetna's unjust enrichment claim for purposes of the current motion.

reasonable in the relevant community; and (3) under Pennsylvania law, in the absence of a contractual agreement, the provider of medical services is only entitled to a reasonable fee for rendering medical care. The defendants move to dismiss on the basis that Huntington Valley was free to bill Aetna any amount it desired for specific medical procedures, and no inequity could come from Aetna's payments to Huntington Valley given that Aetna determined its payments unilaterally according to its out-of-network rate schedule, and with no reference to the amount billed by Huntington Valley.

The cases cited by Aetna in its response—*Temple Univ. Hosp., Inc. v. Healthcare Mgmt. Alternatives, Inc.*, 832 A.2d 501 (Pa. Super. 2003) and *Eagle v. Snyder*, 604 A.2d 253 (Pa. Super. 1992)—do not support the proposition that it may recover on an unjust enrichment theory because Aetna paid Huntington Valley an unreasonable amount for Huntington Valley's services. *Temple* was a paradigmatic *quantum meruit* case that held that a hospital was entitled to recover a reasonable rate from a Medicaid-affiliated insurer for emergency services provided to indigent patients pursuant to federal mandate. *See Temple*, 832 A.2d at 508. *Eagle* involved the similar issue of what a patient is obligated to pay a medical provider for treatment when the parties had not agreed on a fee in advance. *See Eagle*, 604 A.2d at 254. The *Temple* and *Eagle* scenarios are entirely distinct from the one at bar. Neither case is applicable to a situation in which an insurance company seeks rescission of moneys already paid by it as a result of the use of the insurance company's own out-of-network rate schedule on the basis that the billed amount by the provider, which was not paid, was unreasonable. I am not aware of any other binding or persuasive authority in support of Aetna's unjust enrichment theory.

To demonstrate unjust enrichment, Aetna must show that Aetna conferred a benefit on Huntington Valley for which it did not receive compensation, under circumstances where

Huntington Valley's retention of the benefit without paying value would be inequitable. *See Roethlein*, 81 A.3d at 825 n.8. Here, there is no inequity in the defendants' retention of any money paid to them by Aetna. Regardless of whether Huntington Valley's pricing was abnormal, Aetna had no obligation to pay those prices or any fixed portion thereof, and Aetna freely decided on the amount of its own payments to Huntington Valley. The payments for which Aetna now seeks rescission were made volitionally and surely with awareness of the markets for medical services in southeastern Pennsylvania and elsewhere. To the extent Aetna now claims it regrets those payments, which were amounts which it itself set, I see no reason to believe that the law provides it with a remedy.

Aetna fails to state a claim for unjust enrichment, *see id.*, and I will grant the motion to dismiss with respect to Aetna's unjust enrichment claims against all defendants.

### G. Motion for More Definite Statement

Finally, the defendants argue that Aetna has failed to allege sufficient facts to articulate a theory of liability against FSA and FSM, and the factual and legal basis for several of its claims remains unclear, such that they are entitled under Rule 12(e) to a more definite statement of Aetna's claims. *See* Fed. R. Civ. P. 12(e). Aetna responds that it has adequately stated its theories of liability by alleging that FSA and FSM control Huntington Valley and, moreover, created and employed the kickback scheme that is the gravamen of the amended complaint. I agree this is sufficient to permit the defendants to reasonably prepare a response to the amended complaint, and I will deny the motion for a more definite statement accordingly. *See id*; *see also Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.").

An appropriate order follows.