**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____ :
                                        :
AETNA LIFE INSURANCE COMPANY,           :
                                        :
                    Plaintiff,          :          No. 2:13-03101-NIQA
                                        :
            v.                          :
                                        :
                                        :
FOUNDATION SURGERY AFFILIATES,          :
LLC, et. al.,                           :
                                        :
                    Defendants.         :
_____ :

## ORDER

AND NOW, this ___ day of _____, 2015, upon consideration of Plaintiff's Motion for Reconsideration or, in the Alternative, for Certification of Issues for Interlocutory Appeal, and any response thereto, it is hereby ORDERED that Plaintiff's Motion is GRANTED.  IT IS FURTHER ORDERED that partial summary judgment as to liability is ENTERED in favor of Plaintiff and against Defendants on Count III of the Amended Complaint, or in the alternative the Court's September 15, 2015 Order is amended to certify its rulings on Counts I, III, and IV for immediate interlocutory appeal.


BY THE COURT:



_____
Nitza I. Quiñones Alejandro, U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| AETNA LIFE INSURANCE COMPANY, | : |
| | : |
| Plaintiff, | :     No. 2:13-03101 |
| | : |
| v. | : |
| | : |
| | : |
| FOUNDATION SURGERY AFFILIATES, | : |
| LLC, et. al., | : |
| | : |
| Defendants. | : |

---

**PLAINTIFF'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE,
FOR CERTIFICATION OF ISSUES FOR INTERLOCUTORY APPEAL**

Plaintiff, Aetna Life Insurance Company ("Aetna"), hereby moves for Reconsideration in part of the Court's September 15, 2015 Memorandum and Order,[1] or in the alternative for Certification of its rulings on Counts I, III and IV for immediate interlocutory appeal.  In support of its Motion, Aetna avers the following:

1.       This case involves unlawful and fraudulent business policies and practices that were contrived by Defendants Foundation Surgery Affiliates, LLC and Foundation Surgery Management, LLC (together "Foundation"), and then implemented with former-Defendant[2] Huntingdon Valley Surgery Center ("HVSC").  Foundation's policies and directives fraudulently inflated health care costs to Aetna and its self-funded customers, including public entities, unions, and large Philadelphia-area employers, by illegally inducing patient referrals from physicians, in violation of Pennsylvania law and the public policy interest in containing

---

[1] The Memorandum and Order at issue was authored by the Honorable William H. Yohn, Jr.  Shortly thereafter, this entire case was transferred to Your Honor for all further proceedings. *See* ECF Doc. No. 186.

[2] HVSC settled with Aetna.

healthcare costs.  Accordingly, this Motion for Reconsideration and/or for Certification is significantly invested with the public interest.

2.      In particular, Foundation established an "out-of-network" scheme at HVSC to pay kickbacks to physicians to induce their referral of patients to HVSC, rather than to less costly in-network facilities in the same geographic area.  In addition to paying these illegal kickbacks to physicians, Defendants' pattern of misconduct also inflated healthcare costs by **secretly waiving** payments that patients were required to make in order to treat at out-of-network HVSC, including co-pays, co-insurance, and deductible payments.  It is undisputed that Defendants did not inform Aetna of this secret waiver scheme during the relevant timeframe.

3.      Contrary to Pennsylvania law and well-settled public policy to contain healthcare costs, these practices have harmed, and will continue to harm, the public interest, including Aetna and its self-funded customers (*i.e.*, those who pay their own health care costs, such as unions, governmental entities, and large Philadelphia-area employers) unless they are stopped by the Court.  Aetna's expert found that Defendants fraudulently inflated the charges for these out-of-network services performed at HVSC.  This resulted in inflated payments to Defendants, costing Aetna and its self-funded customers nearly $12 million in actual damages.

4.      As Aetna's expert explained, these illegal schemes dramatically increased healthcare payments, thus raising healthcare costs to the federal Medicare program, individuals, employers, and commercial insurers.

5.      Aetna contends that Defendants' practices, *inter alia*, violated the Pennsylvania Insurance Fraud Statute, 18 Pa. Cons. Stat. § 4117(a) (involving false, incomplete, and misleading claim submissions) and § 4117(b)(2) (involving the payment of unlawful kickbacks).

6.      Under § 4117(a), Defendants are forbidden from submitting false, misleading, or incomplete bills for reimbursement to Aetna.  *See id.* § 4117(a)(2)-(3).  The federal government,

numerous courts, and several Attorneys General have definitively concluded that waiving co-pays/co-insurance/deductible payments *without disclosure* to the payor (*i.e.*, Medicare or Aetna) constitutes fraudulent and false billing.  Because Defendants' policy of doing just that is in writing and undisputed, Aetna sought summary judgment on Count III of its Amended Complaint.  Foundation also sought summary judgment in its favor on Count III.

7.      On September 15, 2015, the Court (Yohn, J.) erroneously denied Aetna's Motion for Partial Summary Judgment as to Count III of its Amended Complaint, and granted Foundation summary judgment on that same Count.

8.      The Court's erroneous conclusion is premised upon two critical, but unsupported assumptions concerning Medicare billing and reimbursement that are incorrect as a matter of law.  *See* ECF Doc. No. 182, Memorandum Opinion ("Mem.") at 19-20.  Significantly, the Court erroneously seized upon a single, unsupported sentence in one of Foundation's summary judgment submissions concerning Medicare claim submissions and reimbursement.  Foundation made that representation to the Court in a disingenuous attempt to distinguish the federal government's recognition that the same practices in the Medicare context constitute fraud. Unfortunately, Foundation's misrepresentation—which was not accompanied by any citation to any relevant legal source—is incorrect as a matter of law, but appears to have misled the Court on this significant reimbursement issue.

9.      The Court also erroneously concluded that the terms of a contract between Defendants and a third party immunized Defendants under the Pennsylvania Insurance Fraud Statute.  *Id.* at 20-22.  This also is reversible legal error, because contractual terms have no bearing on whether a party's conduct violated *separate*, legal duties imposed by Pennsylvania statutes.  And, in any event, the Court overlooked the clear provisions of those contracts which require Defendants to collect member co-payments, co-insurance, and deductibles.  This legally

and factually erroneous holding, if permitted to stand, will encourage contracting around statutory obligations in violation of clear Pennsylvania law, and judicially greenlight fraudulent billing for healthcare services to the detriment of Pennsylvania citizens and employers, such as occurred here.

10.     The Court's ruling is predicated upon multiple legal errors.  After this Court corrects them, Aetna is entitled to partial summary judgment concerning Defendants' liability on Count III.

11.     In the alternative, because of the significant healthcare cost containment policy issues implicated here, Aetna respectfully requests that the Court decisively act in the public interest by amending the September 15, 2015 Order, and certifying these erroneous rulings on Counts I (unlawful kickbacks), and III-IV (insurance fraud) for immediate interlocutory appeal. Certification will allow the Third Circuit to promptly correct these judicial errors that encourage and reward fraudulent schemes that are the antithesis of the Affordable Care Act, federal and state legislation, and regulations that seek to contain healthcare costs.

12.     As the federal government has recognized, "[h]ealth care fraud perpetrators steal billions of dollars each year from Federal and State governments, providers, American taxpayers and some of our most vulnerable citizens.  Fraud, waste and abuse drive up costs for everyone in the health care system . . . When families are working to make every dollar count, eliminating waste, fraud and abuse must be a top priority."[3]

13.     As framed by Judge Yohn, these rulings admittedly involve controlling questions of law.  The Third Circuit's immediate review will not only expedite the resolution of this matter, but will also vindicate the strong public policy interest in containing healthcare costs,

---

[3] Centers for Medicare & Medicaid Services, *CMS Fraud Prevention Initiative*, "New Tools to Fight Fraud and Protect Taxpayer Dollars," *available at* https://www.cms.gov/outreach-and-education/outreach/partnerships/downloads/backgrounderfraudpreventioninitiative.pdf.

including by eliminating Defendants' blatant fraud and misconduct that has overcharged Aetna and its self-insured customers, including governmental entities, unions, and large Philadelphia-area employers.

14.     Rather than delay vindication of this important public interest with a trial on only a portion of Aetna's case, certification for an immediate appeal will conserve judicial resources, and thus obviate the need for multiple, piecemeal trials in this matter.  Further, immediate appellate review is even more appropriate in this case because Judge Yohn admitted these controlling legal questions at issue are important questions of first impression.

WHEREFORE, Plaintiff respectfully requests that this Court grant its Motion for Reconsideration and enter judgment in favor of Aetna on Count III or, in the alternative, amend its Order to certify its rulings on Counts I, III and IV for immediate interlocutory appeal.

Respectfully submitted,

*/s/ John M. Elliott*
John M. Elliott
Mark J. Schwemler
John P. Elliott
Gregory S. Voshell
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
215-977-1000

September 29, 2015

*Counsel for Plaintiff Aetna Life Insurance Company*

5

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————— :
                                                                    :
AETNA LIFE INSURANCE COMPANY,          :
                                                                    :
                        Plaintiff,                          :          No. 2:13-03101
                                                                    :
            v.                                                  :
                                                                    :
                                                                    :
FOUNDATION SURGERY AFFILIATES,         :
LLC, et. al.,                                                 :
                                                                    :
                        Defendants.                      :
———————————————————— :

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
### OF ITS MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR
### CERTIFICATION OF ISSUES FOR INTERLOCUTORY APPEAL

Plaintiff Aetna Life Insurance Company ("Aetna"), through its undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion for Reconsideration of the Court's (Yohn, J.) September 15, 2015 Memorandum and Order or, in the Alternative, its Motion for Certification of Issues for Interlocutory Appeal.

### INTRODUCTORY STATEMENT

This case involves unlawful and fraudulent business policies and practices, which were contrived by Defendants Foundation Surgery Affiliates, LLC and Foundation Surgery Management, LLC ("Foundation") and implemented by them at Huntingdon Valley Surgery Center ("HVSC") (a former Defendant that has settled with Aetna). These practices unnecessarily inflated the cost of healthcare to Aetna and its self-funded customers (*i.e.*, unions, large Philadelphia-area employers, and governmental entities) by illegally inducing patient referrals from physicians. Defendants also induced patients not to use Aetna's in-network facilities by **secretly waiving** millions of dollars in member responsibility payments (co-pays).

Defendants then fraudulently overbilled Aetna and its self-funded customers by failing to disclose those secret kickbacks and waivers when submitting claims for reimbursement; and Defendants tortiously interfered with contracts between Aetna and physicians within Aetna's network of contracted providers. This pattern of misconduct grossly inflated healthcare costs and defrauded Aetna and its self-funded customers.

Aetna asserted several claims against Defendants and sought partial summary judgment concerning Count III of its Amended Complaint. Aetna alleged that Foundation's practice of waiving member responsibility payments (co-pays, co-insurance, and deductibles), and not informing Aetna of the secret waivers, violated Pennsylvania's Insurance Fraud Statute, 18 Pa. Cons. Stat. § 4117(a). Defendants admittedly waived member payments in excess of $4 million over the course of the four years in question. And there is no dispute that Defendants concealed this material fact from Aetna when they submitted bills for reimbursement.

Specifically, Defendants did not adjust their billed charges to account for (and disclose) the secret discounts. And while Defendants drafted a letter to send to Aetna alerting Aetna of these secret waivers, Defendants intentionally decided not to send it, specifically so that they could remain under Aetna's "radar." Instead, Defendants fraudulently submitted phantom charges that masked their secret waiver of member responsibility payments. The federal government, numerous courts, and state Attorneys General have all found this practice – submitting claims without disclosing a secret waiver of member payments – is fraudulent. Aetna asserted that this fraudulent scheme resulted in false, misleading, and incomplete claim submissions under Pennsylvania law as well. *See id.* § 4117(a)(2) and (a)(3).

Shortly before this case was transferred to Your Honor, Judge Yohn denied Aetna's Motion, and erroneously granted Foundation summary judgment on this issue. By doing so, he

encouraged, rather than stopped, Foundation's healthcare fraud in violation of state law and compelling public policy.  As the federal government has recognized, "[h]ealth care fraud perpetrators steal billions of dollars each year from Federal and State governments, providers, American taxpayers and some of our most vulnerable citizens.  Fraud, waste and abuse drive up costs for everyone in the health care system . . . When families are working to make every dollar count, eliminating waste, fraud and abuse must be a top priority."[4]   The Pennsylvania Attorney General's office likewise has found that insurance fraud, including in the health care context, "not only increases our insurance rates, it also raises the cost of our consumer goods and services, business expenses and health care. It hits all of us where it hurts - in our pocketbooks."[5]

However, Judge Yohn erroneously relied on legal analysis concerning Medicare billing and reimbursement rules that is incorrect as a matter of controlling law.  He did so based upon misleading and false statements made by Defendants to distinguish this case from the many instances in which this precise conduct was held unlawful.  The Court created a distinction between "actual" charges in the Medicare context and "billed" charges in the commercial payor context, claiming that because Defendants bill Medicare differently than commercial insurers, Defendants did not commit fraud as to Aetna.  *See* ECF Doc. No. 182, Memorandum Opinion ("Mem.") at 19.  However, there is no such distinction as a matter of law.  Clear federal law and the accompanying federal rules and regulations require medical providers to establish a chargemaster (a menu of charges for particular medical services), and to then bill ***all payors*** – from Medicare to Aetna – in a uniform fashion using that chargemaster.  Thus, the charge

---

[4] Centers for Medicare & Medicaid Services, *CMS Fraud Prevention Initiative*, "New Tools to Fight Fraud and Protect Taxpayer Dollars," *available at* https://www.cms.gov/outreach-and-education/outreach/partnerships/downloads/backgrounderfraudpreventioninitiative.pdf.

[5] Pennsylvania Office of Attorney General, *Insurance Fraud Section*, *available at* https://www.attorneygeneral.gov/Criminal/Insurance_Fraud_Section/.

Defendants submitted to Medicare for a given procedure must be the same charge submitted to any commercial insurer for the same procedure.   The distinction the Court mistakenly created does not exist as a matter of law.

The Court also erroneously assumed that the "actual" charge in the Medicare context is the charge that the provider "intends" to collect from Medicare and the Medicare beneficiary. *Id.*  However, pursuant to well-established Medicare reimbursement rules, Defendants never could have "intended" to collect 100% of their billed charge to Medicare, as the Court incorrectly assumed.  Contrary to the Court's erroneous rationale, Defendants (like all providers) expected (or "intended") to receive only a fraction of their billed charge from Medicare. Defendants knew this, because as a matter of undisputed fact, they received just a fraction of what they billed Medicare.  Yet, Foundation knowingly argued the exact opposite to the Court, which relied incorrectly on this dangerously false representation.

These clear legal errors served as the foundation of the Court's erroneous ruling, which must be promptly reconsidered and reversed consistent with controlling law and the nationally-mandated policy to eliminate fraud and reduce healthcare costs.   Accordingly, the Court's legally and factually unsupported rationale for granting Foundation summary judgment unravels upon judicial scrutiny, and compels summary judgment for Aetna on Count III.

The Court also erroneously conflated Defendants' purported obligations under the terms of agreements with Multiplan and Beech Street (two third parties) with its obligations under the terms of the Pennsylvania Insurance Fraud Statute.  The Court should have focused on whether Defendants' undisputed conduct violated § 4117(a)(2), not whether Defendants' misconduct violated the terms of a contract with a third party.  Even if those third party contracts permitted Defendants to waive co-pays (which, of course, they do not), Defendants are still under a

*separate* legal duty *not to violate* Pennsylvania statutes.  The Court's erroneous holding, allowing the terms of a contract with a third party to immunize unlawful misconduct under Pennsylvania law, also constitutes clear legal error.  For all the above reasons, the Court's errors are contrary to well-settled and controlling law, including the important public policy to reduce healthcare costs and root out fraudulent misconduct epitomized by Defendants' scheme to overbill Aetna.

Aetna respectfully requests that if the Court does not grant Aetna reconsideration, it should certify Judge Yohn's September 15, 2015 Order for immediate appeal.  The rulings at issue are controlling legal questions and also admittedly questions of first impression. Resolution of these rulings by the Third Circuit at this stage will enhance judicial economy by not burdening this busy Court with a trial that will inevitably result in an appeal to the Third Circuit; will prevent the possibility of multiple trials; will give certainty to the parties concerning the construction of § 4117; and will conserve the Court's and the parties' resources.  Indeed, several courts have previously found that immediate certification of questions of first impression, like the ones at issue here, is most appropriate.  As set forth below, Aetna satisfies the three elements needed for the Court to certify its order, and respectfully requests that it does so if reconsideration is not granted.

## ARGUMENT[6]

**A.    The Court's Medicare Discussion Is Contrary to Clearly Established Law.**

**1.    The Distinction the Court Attempts to Draw Between "Billed" and "Actual" Charges Does Not Exist as a Matter of Law or Fact.**

Section 4117(a)(2) prohibits a provider who "[k]nowingly and with the intent to defraud any insurer or self-insured, presents or causes to be presented to any insurer or self-insured any statement forming a part of, or in support of, a claim that contains any false, incomplete or misleading information concerning any fact or thing material to the claim."  18 Pa. Cons. Stat. § 4117(a)(2).  This provision has been applied broadly, including to circumstances where medical providers submit false bills to insurers.  *See, e.g.*, *Allied Med. Assocs. v. State Farm Mut. Auto Ins. Co.*, No. 2:13-03101, 2009 U.S. Dist. Lexis 33576 (E.D. Pa. Apr. 20, 2009).

Aetna asserts that Foundation's express practice and policy of waiving payments required of the patient (co-pays, co-insurance, and deductibles) violates this statute because Defendants did not inform Aetna of their secret waiver policy, which generates a false, misleading and incomplete charge to Aetna.  The practice of waiving member payments without disclosure to the commercial or governmental payor has been found fraudulent and unlawful in several analogous contexts for many decades.  For instance, the Federal OIG responsible for Medicare Fraud has reasoned for more than twenty years that such a practice is unlawful.  The OIG reasons as follows:

---

[6] "Reconsideration is proper where the moving party demonstrates one of three grounds: '(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct *a clear error of law or fact* or to prevent manifest injustice.'"  *Borough of Landsdale v. PP&L, Inc.*, 503 F. Supp. 2d 730, 733 (E.D. Pa. 2007) (quoting *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)) (emphasis added).  Aetna's instant Motion invokes the third basis for granting reconsideration.

> A provider, practitioner or supplier who routinely waives Medicare copayments or deductibles is **misstating its actual charge**. For example, if a supplier claims that its charge for a piece of equipment is $100, but routinely waives the copayment, the actual charge is $80. Medicare should be paying 80 percent of $80 (or $64), rather than 80 percent of $100 (or $80). As a result of the supplier's misrepresentation, the Medicare program is paying $16 more than it should for this item. . . . At first glance, it may appear that routine waiver of copayments and deductibles helps Medicare beneficiaries. By waiving Medicare copayments and deductibles, the provider of services may claim that the beneficiary incurs no costs. In fact, this is not true. Studies have shown that if patients are required to pay even a small portion of their care, they will be better health care consumers, and select items or services because they are medically needed, rather than simply because they are free. **Ultimately, if Medicare pays more for an item or service than it should, or if it pays for unnecessary items or services, there are less Medicare funds available to pay for truly needed services.**

Dep't of Health & Human Servs., *OIG Special Fraud Alert*, 59 F.R. 65372, 65374-75 (Dec. 19, 1994), *also available at* https://oig.hhs.gov/fraud/docs/alertsandbulletins/121994.html (emphases added). The OIG concluded that the "[r]outine waiver of deductibles and copayments by charge-based providers, practitioners or suppliers is unlawful because it results in (1) false claims, (2) violations of the anti-kickback statute, and (3) excessive utilization of items and services paid for by Medicare." *Id.* Courts and Attorneys General have reached the same conclusion in analogous contexts.[7]

---

[7] *See Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 701-02 (7th Cir. 1991) (Easterbrook, J.) (holding that a provider who seeks payment from an insurer must collect co-payments from insured patients if it is required under the insurance contract); *United States ex rel. Sharp v. E. Okla. Orthopedic Ctr.*, 2009 U.S. Dist. Lexis 15988, at *73-77 (N.D. Okla. Feb. 27, 2009) (citing the OIG Fraud Alert and finding allegations that a provider routinely waived Medicare coinsurance payments sufficient to state a claim under the False Claims Act); *Feiler v. New Jersey Dental Ass'n*, 467 A.2d 276, 282-83 (N.J. Super. Ct. 1983) (finding that "statements to a third-party payer whose agreement includes a copayment feature appear to be untrue on their face" when the provider waives member payments, and that those billing methods constitute fraud because they shift costs away from the patient and "fraudulently, onto the shoulders of another payer"); *In re Martin H. Handler, M.D., P.C. v. DiNapoli*, 88 A.D.3d 1187, 1188 (N.Y.

The Court's (Yohn, J.) decision to deny Aetna summary judgment as to Counts III and IV was erroneously premised upon drawing a distinction between billing and reimbursement in the Medicare and commercial insurance contexts.   *See* Mem. at 19-21.   In doing so, the Court rejected parallels Aetna drew between this case and Medicare fraud.   The specific distinction that forms the backbone of the Court's decision is as follows:   the Court reasoned that when billing Medicare, providers submit their "actual" charge, which the Court defined as the amount of money the provider "intends" to collect from Medicare and the beneficiary.   *Id.* at 19.   But, the Court concluded, in the commercial context, the same provider bills an insurance company a different, "billed charge," which the Court described as a "sticker price" contained on a chargemaster.   *See id.*   In other words, the Court believed that a provider charges Medicare one price (the amount that it "intends" to collect from Medicare) and a commercial insurer a different price for the same service (merely a "sticker" price it does not intend to collect in full).

This legally erroneous and unsupported distinction — disingenuously contrived by Foundation, *see* ECF Doc. No. 147, Foundation's Response Br. at 10, and relied upon in clear error by the Court—does not exist.   As a matter of law, providers **must** bill Medicare in the same fashion as they bill commercial insurers.   Stated differently, providers must charge Medicare the same price they charge commercial insurers like Aetna.   Providers enrolled in the Medicare program are obligated to establish a chargemaster that is *uniformly applied* regardless of whether

---

App. Div. 2011) (noting that the "amount sought in the claim for services is, thus, artificially inflated when co-payments are routinely waived, causing overpayment by [the insurer] and the state"); N.Y. Ins. Dep't, Gen. Counsel Op. (Apr. 8, 2005), available at http://www.dfs.ny.gov/insurance/ ogco2005/rg050407.htm; S.C. Att'y Gen., Informal Op. (Aug. 14, 1995), available at http://www.scag.gov/wp-content/uploads/2013/12/95aug14davis.pdf.; *cf. Biomed Pharms., Inc. v. Oxford Health Plans (NY), Inc.*, 522 Fed. App'x 81 (2d Cir. 2013) (finding under ERISA that waivers granted by a medication supplier were routine and not based on a good-faith inquiry into the patient's financial condition, and it was therefore reasonable for the payor to pay less than the full amount charged by the supplier).

the payor is Medicare or a commercial insurance company.  Section 2203 of the Medicare

Provider Reimbursement Manual ("PRM")[8] explains:

> So that its charges may be allowable for use in apportioning costs under the program, each facility should have *an established charge structure* which is *applied uniformly* to each patient as services are furnished to the patient and which is reasonably and consistently related to the cost of providing the services.

*See also* 42 C.F.R § 413.50(a), (h).  Not surprisingly, therefore, courts, federal regulations, and

secondary sources all confirm that providers **must** bill Medicare the same charges they apply to

commercial insurance bills for the same services.[9]  *See, e.g.*, *Maldonado v. Ochsner Clinic

Found.*, 493 F.3d 521, 525 & n.7 (5th Cir. 2007) ("Insured patients paid a wide variety of

discounts from the chargemaster rates depending on the individual contracts," and noting that

"all patients *are charged* the same rate, regardless of insured or insured status. . . .[but] insurance

companies, as well as Medicare and Medicare, generally are not expected ***to pay*** the full

chargemaster rate." (emphasis added)).  Accordingly, there is no difference between the "actual"

charge submitted in Defendants' Medicare bills and the "billed" charge submitted in Defendants'

Aetna bills.  *See Smith v. Life Investors Ins. Co. of Am.*, 2009 U.S. Dist. Lexis 103536, at *21-22

(W.D. Pa. Nov. 6, 2009) (analyzing the Medicare reimbursement rules, and reminding that the

"'actual charge' [is] 'the amount a physician or other practitioner actually *bills* a patient for his

---

[8] The Medicare Provider Reimbursement Manual "provides guidelines and policies to implement Medicare regulations which set forth principles for determining the reasonable cost of provider services" furnished under Medicare.  Centers for Medicare and Medicaid Services, "Provider Reimbursement Manual," Part 1, Foreword.  "The provisions of the law and the regulations are accurately reflected in this manual," and "provide illustrative case material useful in interpreting and applying policies and procedures contained in instructional issuances."  *Id.*; *see also Catholic Health Initiatives v. Sebelius*, 617 F.3d 490, 491 (D.C. Cir. 2010) (explaining the force and effect of the Provider Reimbursement Manual).

[9] Indeed, one of the sources explicitly relied upon by Judge Yohn in his opinion acknowledges that a provider's chargemaster is applied to all services for a given item, "regardless of payer type."  Mem. at 20 (citing Cal. Health & Safety Code § 1339.51(b)(1)).

insurance for a medical *service or procedure*'"); *see also Liberty Nat'l Life Ins. Co. v. Univ. of Ala. Health Servs. Found.,* P.C., 881 So. 2d 1013, 1018 (Ala. 2003) (involving provider affirming that the "actual charges . . . are the amounts billed by UAB" as derived from UAB's chargemaster).   Medicare's published glossary defines the term "actual charge" as the "amount of money a doctor or supplier *charges* for a certain medical service or supply," which exceeds the amount Medicare reimburses.[10]   Thus, the dispositive distinction the Court erroneously created between "actual" charges in the Medicare context and "billed" charges in the commercial context simply does not exist.  Mem. at 19.[11]   Foundation knows this fact, because it set HVSC's chargemaster, and the charges therein are the same for Medicare and other commercial payors.

The Court makes further reversible error by concluding that when billing Medicare, the provider submits a charge that it "intends to collect between the insurer and the beneficiary." *See* Mem. at 19.  This too is incorrect as a matter of clear law and undisputed fact.  Medicare providers do not "intend" to collect the amount that they bill Medicare.  In most instances, the provider intends to, and will, receive significantly less than what it charges Medicare, because providers are reimbursed pursuant to applicable fee schedules. [12]   CMS itself recognizes that the

---

[10] *See* CMS Glossary, *available at* https://www.cms.gov/apps/glossary/default.asp? Letter=A&Language=English); *see also* Uwe E. Reinhardt, *The Pricing of U.S. Hospital Services: Chaos Behind a Veil of Secrecy*, 25 Health Affairs 57, 59 (2006) ("Typically, a hospital will submit, for all of its patients, detailed bills based on its chargemaster, even to patients covered by Medicare.").

[11] Medicare distinguishes between an "actual charge" and the Medicare allowed (or "approved") amount, not between "actual" and "billed" charges.  *See  United States ex rel. Sharp v. E. Okla. Orthopedic Ctr.*, 2009 U.S. Dist. Lexis 15988, *73 (N.D. Okla. Feb. 27, 2009).  Thus, contrary to the Court's reasoning, Foundation "uniformly lift[s]" charges from its chargemaster when billing Medicare, in the same way it does when billing Aetna.  Mem. at 19.

[12] For instance, hospitals are reimbursed pursuant to predetermined diagnosis-related groups (DRGs), which pay less than the provider's billed charge.  *See* Medicare Claims Processing Manual, Chapter 3, Section 20.1.  In some instances, a hospital may be entitled to what is referred to as an "outlier" payment.  While still *less than the amount charged*, outlier

"actual charge" (*i.e.* what a provider bills Medicare) "is ***often more than the amount that***

Medicare approves." CMS Glossary, at "actual charge," *supra* (emphasis added). Indeed, in

*Smith*, the federal court made this same point, reminding that "[t]he actual charge may differ

from the customary, prevailing, and/or reasonable charges under Medicare and other insurance

programs." 2009 U.S. Dist. Lexis 103536, at *21-22.[13] Importantly, Foundation is well aware of

this fact, because as a matter of undisputed fact, Foundation's facilities receive much less than

what they bill Medicare. Foundation, armed with this knowledge, should never have misled

Judge Yohn by misrepresenting otherwise. They will be unable to represent otherwise to the

Court in responding to this Motion.

In summary, there were two pillars supporting Judge Yohn's decision: (1) a distinction

between "actual" and "billed" charges; and (2) the belief that when billing Medicare, a provider

"intends" to collect 100% of the charge submitted to CMS. Both assumptions are incorrect as a

matter of fact and of controlling law. These legal errors fundamentally undermine the Court's

ruling.

---

payments are made in rare instances involving unusually expensive cases. *See* Medicare Claims
Processing Manual, Chapter 3, Section 20.1.2. Likewise, ambulatory surgery centers are not
paid their billed charge, a fact of which Foundation is keenly aware. Medicare reimbursement to
Defendants in this case was just a small fraction of their actual billed charge.

[13] Foundation attempted to lump together the concepts of "reasonable," "customary" and
"actual" charges (again without citation), which may have further misled Judge Yohn. It is clear
as a matter of law that these are all distinct concepts – in fact, even the OIG Fraud Alert
Foundation was referencing draws the very distinction that Foundation was attempting to
eliminate. Foundation's misrepresentations concerning Medicare billing and reimbursement
rules was a great disservice to Judge Yohn, and a violation of its counsel's duty of candor to the
tribunal. *See* Pa. R. Prof. Conduct § 3.3.

    **2.**    **Accounting for these Clear Legal Errors, the Court's Rationale for Denying Aetna Summary Judgment Unravels.**

After accounting for these federal reimbursement rules, the reasoning in the OIG Fraud Alert—which has been adopted by courts and Attorneys General in the state law context—presents a direct analog to the facts of this case and it underscores the reason that Defendants' conduct violates § 4117(a).  The OIG Fraud Alert references charge-based providers/supplies (*i.e.*, providers/suppliers whose billed charge is directly relevant to reimbursement).  Here, it is undisputed that Defendants were reimbursed based upon their level of charges to Aetna, because they were reimbursed by Aetna at a set percentage of the charge.

The OIG concludes that the waiver of member payments results in a false or inflated charge, because a discount was applied to the charge without disclosure to Medicare.  In other words, the charge submitted to Medicare (or any provider) for reimbursement is not an honest or accurate charge, because it conceals a secret discount.  Judge Easterbrook accurately described such a charge as a "phantom" charge, even before the OIG Fraud Alert was published.  *See Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 701-02 (7th Cir. 1991) (Easterbrook, J.).[14] Because the charge itself is relevant to reimbursement, the "phantom" charge results in a higher payment to the provider than would have otherwise been made, if the provider billed honestly.

The charges submitted by Defendants in this case are every bit as "phantom" as those described by Judge Easterbrook.  Defendants were required to either collect the member

---

[14] The Court discounts, without discussion, Judge Easterbrook's analysis and the analysis of other tribunals as "inapposite" and from other jurisdictions.  Mem. at 20.  Yet, as this Court recognized, this case presents issues of first impression under Pennsylvania law.  When faced with a question of first impression under Pennsylvania law, "Pennsylvania courts look to other jurisdictions for guidance."  *Menichini v. Grant*, 995 F.2d 1224, 1229 (3d Cir. 1993); *see also Drake v. Drake*, 725 A.2d 717, 724 (Pa. 1999) ("This is an issue [under the Pennsylvania workers' compensation statute] of first impression and we look to other jurisdictions for guidance.").  The Court's wholesale rejection of persuasive authority from other jurisdiction is inapposite with this guidance.

responsibility payment *or* inform Aetna of the discount, because billing Aetna without disclosing this fact led to unlawful claim submissions.  *See* § 4117(a)(2).  They did neither.  Because Aetna reimbursed Defendants on a percentage of their billed charges, reimbursement to Defendants was impacted by a charge that hid a secret discount already provided to the member.  By failing to disclose this secret discount, Aetna calculated its payment based upon the full charge.  It should have been calculating payment obligations based on the discounted (*i.e.*, honest) charge, which was an amount kept secret from Aetna.   The charge was false, incomplete and misleading on its face because Defendants failed to inform Aetna of this secret waiver policy at any point during the relevant timeframe.  This is all Aetna must show to prove that Defendants violated the Pennsylvania Insurance Fraud Statute.  Aetna will put on facts at trial to establish its measure of damages.  The jury can then decide the extent of harm.

     Because Judge Yohn's reasoning was built upon a legal premise that is incorrect as a matter of law, the Court's rationale for denying Aetna's motion is reversible error, and the Court should reconsider this ruling.

**B.    Defendants' Contracts with a Third Party Do Not Immunize Them From Liability Under the Pennsylvania Insurance Fraud Statute.**

     Judge Yohn also committed additional clear error of law when mischaracterizing Defendants' contracts with third parties as relieving Defendants from their obligations under a state statute.  In its ruling on Count III, the Court repeatedly notes that Defendants' contracts with third parties (Beech Street and Multiplan) required only that Defendants list their "billed" charge on the UB-04 form when seeking reimbursement from Aetna.  The Court concludes that Defendants did just this and, therefore, they did not violate the law.   This conclusion is a reversible error of law for several reasons.

The terms of a contract between Defendants and a third party cannot dictate whether Defendants' conduct violated a Pennsylvania statute and harmed Aetna.  The question for Judge Yohn was  merely whether Defendants knowingly submitted any statement to Aetna that was "false, incomplete or misleading." 18 Pa. Cons. Stat. § 4117(a)(2).  By knowingly billing Aetna ***without disclosing* the secret waivers**, Defendants caused a false, incomplete and misleading submission to be made.  *See supra* Section A.  This is a separate, statutory duty with which Defendants must comply.  The Court criticizes Aetna for not providing any evidence of a contractual or other "obligation" that Defendants were under to collect the member payments. *See* Mem. at n.15.  This criticism misses the mark, however, because the question is not whether Defendants breached a contract between themselves and a third party.  Rather, the relevant question is whether Defendants violated duties imposed upon them by the Pennsylvania Insurance Fraud Statute.  Aetna's contention, supported by undisputed facts and ample, controlling case law, is that secretly waiving such payments *without disclosing that fact* to Aetna results in a false, incomplete and misleading claim submission.[15]

Even if these contracts with third parties allowed Defendants to waive member responsibility payment collections without informing Aetna (which they do not, *see infra*) Defendants were still under a separate, statutory duty not to submit false, misleading, or incomplete bills to Aetna.  Defendants were required to disclose these secret waivers to Aetna,

---

[15] Aetna submitted direct evidence that Defendants were aware of this duty, that they drafted a letter to send to Aetna, but that they did not send that letter.  *See* Aetna Resp. to Foundation Summ. Judg. Ex. 49.  At a minimum, this evidence was sufficient to overcome summary judgment, because it shows knowledge of an obligation to inform Aetna of the otherwise secret waiver policy.  Indeed, the letters were drafted in 2005, but were not sent to Aetna until November 2012.  In between, Aetna submitted direct evidence that Defendants wanted to fly "under the radar," so as not to alert Aetna to what was occurring at HVSC.  *See* Aetna Resp. to Foundation Mot. at Ex. 45.  This evidence and the inferences drawn therefrom in Aetna's favor were not addressed by the Court in its ruling, and are sufficient standing alone to defeat summary judgment.

and failed to do so.  Defendants cannot avoid complying with independent statutory obligations placed upon them by Pennsylvania law simply by attempting to contract around them with third parties.  *See Caruso v. Med. Prof'l Liab. Catastrophe Loss Fund*, 858 A.2d 620, 625 (Pa. Super. Ct. 2004) (reminding that "contracts cannot change existing statutory laws"); *see Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 750 (Pa. 2002) (same).

Such a result would allow parties to contract around statutory provisions.  For instance, it would no doubt be fraud for Defendants to bill Aetna for services that were not performed.  *See Allied Med. Assocs. v. State Farm Mut. Auto. Ins. Co.*, 2009 U.S. Dist. Lexis 33576, *14 (E.D. Pa. Apr. 16, 2009) (Yohn, J.) (finding that a party sufficiently alleged a violation of § 4117(a) where bills for reimbursement were submitted for medical services not rendered to the patient).  Yet, under the Court's reasoning, if Defendants included a term in the Multiplan or Beech Street agreements that permitted that conduct, they would enjoy immunity under the state statute.  This result is contrary to controlling law on the subject.

Finally, even accepting the Court's erroneous view that the terms of the contracts govern the inquiry, the Court overlooked the terms of these third-party agreements, which *require* Defendants to collect member co-payments, co-insurance and deductibles.   The Multiplan Agreement provides that HVSC "***will*** bill or collect from a Participant all Co-Payments, if any, as specified in the Participant's Benefit Program for Covered Services."  Exhibit "36" to Aetna's Mot. for Summ. Judg. at § 5.4 (emphasis added).  Likewise, the "Network Rental Agreement" between Aetna and Beech Street defines a "Copayment" as a "charge *required* under a Plan that *must be paid* by a Member at the time of the provision of Covered Services."  Exhibit "35" to Aetna's Mot. for Summ. Judg. at § 11.4 (emphasis added).  There is no dispute that the Aetna members at issue were required to make payments in the form of co-payments, co-insurance,

and/or deductibles.  At best, Foundation's view of what the contracts require conflicts with Aetna's, which should have resulted in a denial of Foundation's motion for summary judgment.

Thus, in addition to overlooking Medicare billing rules and guidelines, the Court committed clear legal error when it elevated the terms of a contract between Defendants and a third party above the legal obligations imposed upon Defendants by a Pennsylvania statute.

**C.    In the Alternative, this Court Should Amend its Order and Certify it for Interlocutory Appeal.**

In the alternative, Aetna respectfully requests that the Court amends its order and certifies it for appeal.  Specifically, Aetna seeks interlocutory appeal as to the Court's rulings on Count I (Aetna's cause of action under § 4117(b)(2))[16] and Counts III-IV (Aetna's causes of action under § 4117(a)(2) and (a)(3)).  The Court's decision on these three Counts undoubtedly involved controlling questions of law, the resolution of which will materially advance the conclusion of this case.  The questions of law at issue are also admittedly questions of first impression, and are thus well-suited for immediate appeal.  Moreover, it would make no sense to waste the Court's and the parties' resources with the time and expense of trial on a portion of this case, if ultimately the Third Circuit disagreed with the Court's legal rulings on questions of first impression.  Such a result would necessitate a new trial on many, if not all, of the remaining claims.  Thus, to the extent the Court does not grant Aetna's Motion for Reconsideration, Aetna respectfully requests that the Court allow it to seek interlocutory review of the legal questions decided by the Court on September 15, 2015.

A district court may certify an order for interlocutory appeal if it is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for

---

[16] Aetna is not seeking reconsideration of Judge Yohn's ruling on this issue, but it is seeking the ability to immediately appeal the ruling to the Third Circuit.

16

difference of opinion and that an immediate appeal from the order may materially advance the

ultimate termination of the litigation."  28 U.S.C. § 1292(b).  In other words, the order must "(1)

involve a controlling question of law, (2) offer grounds for difference of opinion as to its

correctness, and (3) if appealed immediately[,] materially advance the ultimate termination of the

litigation." *Russ-Tobias v. Pa. Bd. of Prob. & Parole*, Civ. A. No. 04-0270, 2006 U.S. Dist.

Lexis 8062, at *97 (E.D. Pa. Mar. 2, 2006) (quoting *Katz v. Carte Blanche Corp.*, 496 F.2d 747,

754 (3d Cir. 1974)).

Under the first element, a "controlling question of law" is one which, if decided

erroneously, would lead to reversal on appeal, or is serious to the conduct of the

litigation. *Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co.*, Civ. A. No. 05-281,

2011 U.S. Dist. Lexis 29692, at *6-7 (E.D. Pa. Mar. 23, 2011) (quoting *Katz*, 496 F.2d at 755).

Here, the Court made two legal determinations that resulted in the dismissal of Counts I, III and

IV.  First, the Court concluded as a matter of law (and first impression) that to be considered a

"health care provider" under § 4117(b)(2), the defendant must be licensed to provide health care

with the Commonwealth of Pennsylvania. *See* Mem. at 9-14.  Second, also deciding an issue of

first impression, the Court concluded that Defendants' admitted conduct and express policies did

not violate § 4117(a).  The Court's legal ruling as to this issue was based upon its analysis of

Medicare reimbursement rules and its legal view concerning the impact of contracts between

Defendants and a third party.  The Court's legal rulings resulted in the dismissal of Counts I, III

and IV.  If reversed on appeal, Aetna's claims in each of these Counts is revived.  Aetna thus

satisfies the first prong of the certification analysis.

Under the second element, there is a substantial ground for difference of opinion where

the matter involves "one or more difficult and pivotal questions of law not settled by controlling

17

authority." *National Life Ins. Co.*, 2011 U.S. Dist. Lexis 29692, at *9 (quoting *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984)).  "The absence of controlling law on a particular issue can also constitute 'substantial grounds' [for difference of opinion]." *Duffy v. Lawyers Title Ins. Co.*, Civ. A. No. 11-4503, 2012 U.S. Dist. Lexis 91271, at *8 (E.D. Pa. July 2, 2012); *see also Bellas v. CBS, Inc.*, 221 F.3d 517, 518 (3d Cir. 2000) ("This matter has been certified for interlocutory appeal to address a question of first impression in this court. . . ."); *Montgomery Cnty. v. Merscorp, Inc.*, Civ. A. No. 11-6968, 2014 U.S. Dist. Lexis 129096, at *9 n.2 (E.D. Pa. Sept. 8, 2014) (certifying an order for interlocutory appeal where "th[e] issues presented by this action involve a matter of first impression under Pennsylvania law.").  Here, there is no dispute that the controlling questions of law at issue are also questions of first impression.  As the Court noted in its opinion, there is no controlling Pennsylvania or Third Circuit precedent on these issues.  The second element is therefore satisfied as well.  *See* Mem. at 8-9, 17.

Finally, the Court must consider whether an appeal would materially advance the termination of litigation, including the Court's opinion about settlement possibilities, the potential length of a possibly avoidable trial, and similar matters.  *Russ-Tobias*, 2006 U.S. Dist. Lexis 8062, at *101.  The key consideration is "the avoidance of harm" to a party from a possibly erroneous interlocutory order and the avoidance of harm from possibly wasted trial time and litigation expenses.  *Id.* at *99 (quoting *Katz*, 496 F.2d at 756).  By allowing the Third Circuit to address these issues now, the Court avoids the possibility of multiple trials involving many of the same facts/witnesses.  These considerations are particularly appropriate in this case because Foundation's witnesses reside in Oklahoma, many of Aetna's potential witnesses reside outside of the state, and the burdens of travel for multiple trials will be significant.

## CONCLUSION

For the reasons set forth herein, this Court should grant Aetna's Motion for Reconsideration and enter judgment in Aetna's favor on Count III of Aetna's Amended Complaint.  In the alternative, because this case is heavily invested with the public interest in eliminating fraudulent schemes that are the antithesis of the Affordable Car Act, and federal and state legislation and regulations to contain healthcare costs, and involve issues of first impression, the Court should certify its ruling for immediate, interlocutory appeal to the Third Circuit.

.                                                   Respectfully submitted,

/s/ John M. Elliott
John M. Elliott
Mark J. Schwemler
John P. Elliott
Gregory S. Voshell
ELLIOTT GREENLEAF, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
Date:  September 29, 2015          215-977-1000
*Counsel for Plaintiff Aetna Life Insurance Company*

19

## <u>CERTIFICATE OF SERVICE</u>

I, John M. Elliott, Esquire, hereby certify that I caused the foregoing to be filed electronically with the Court, where it is available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a Notice of Electronic Filing constituting service of the filed document upon all counsel of record.

*/s/ John M. Elliott*_____
John M. Elliott

Date:  September 29, 2015