**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AETNA LIFE INSURANCE COMPANY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 13-3101 |
| | : | |
| HUNTINGDON VALLEY SURGERY | : | |
| CENTER, *et al.*, | : | |
| Defendants. | : | |

**DEFENDANTS FOUNDATION SURGERY MANAGEMENT, LLC
AND FOUNDATION SURGERY AFFILIATES, LLC'S REPLY BRIEF
ADDRESSING THE COURT'S ORDER OF FEBRUARY 23, 2018**

Defendants Foundation Surgery Management, LLC and Foundation Surgery Affiliates, LLC (together, the "Foundation Defendants") hereby file this reply brief addressing issues raised by Plaintiff Aetna Life Insurance Company's Response (D.E. 219) ("Aetna Life's Response Brief"), filed pursuant to the Court's February 23, 2018 Order (D.E. 216) (the "Order'). Aetna Life's assertion that the Court has subject-matter jurisdiction over this case is fundamentally flawed and premised on a variety of unsupported fictions. Consequently, the Foundation Defendants respectfully submit that Aetna Life's Amended Complaint should be dismissed, since it has completely failed to establish that the Court has subject-matter jurisdiction over this lawsuit.

Aetna Life maintains that, five years after it commenced suit only against defendant Huntingdon Valley Surgery Center ("HVSC"), the Court should order that HVSC be "dropped" as a defendant, since HVSC is now allegedly a dispensable party. Aetna Life makes this proposal solely to try to maintain a façade of jurisdiction, after using the power of the Court to extract a ████████████████████████████████████████████ from

HVSC, even as Aetna Life withheld the fact that this Court had no jurisdiction over the lawsuit. Aetna Life also maintains, at this late hour, that the Court should "sever and dismiss all claims related to any self-insured plan whose sponsor is not diverse to Foundation." D.E. 222, p. 25. In sum, after being caught deceiving the Court about subject-matter jurisdiction, Aetna Life now asks the Court to manufacture subject-matter jurisdiction by dropping HVSC and various other real parties in interest, so that it can continue to maintain its diversity suit against the Foundation Defendants. Aetna Life's requests should be rejected.

Rather than narrowing the issues, each of Aetna Life's successive pleadings only serves to further muddy the jurisdictional waters. Despite the passage of nearly five years of litigation, who the real parties in interest actually are appears to be a moving target. Indeed, Aetna Life's Response Brief now maintains that various parties should no longer be part of the case, while new ones should be added. Of course, Aetna Life failed to back up any of its contentions with actual proof (including any proof of citizenship or any proof of valid assignments). Instead, it maintains that these fundamental jurisdictional issues can be resolved at some later point, up to and including at trial. *See* D.E. 222 ("Foundation must wait to litigate [whether the self-insured plan sponsors assigned claims to Aetna Life] as a merits issue at trial.").[1] Moreover, in seeking to dismiss HVSC and certain real-party-in-interest plaintiffs for which Aetna Life concedes an

---

[1] Aetna Life makes this bold claim without citing any authority in support of its position. Of course, issues regarding jurisdiction should be decided before trial. Aetna Life bases its alleged rights to bring suit on behalf of the self-insured plans on its contracts with these plans, which are in writing. Thus, as a threshold matter, whether any given assignment is valid is a matter of contract interpretation for the Court to be determined as a matter of law, not a factual matter to be litigated at trial. More importantly, if there is any dispute as to whether a given contract between Aetna Life and a self-insured plan provides for the assignment to Aetna Life of the self-insured plan's right to sue, then that dispute clearly implicates the rights of the self-insured plans. Accordingly, the self-insured plans are indispensable parties and the issue of assignment cannot be decided in their absence.

inability to prove diversity jurisdiction, Aetna Life necessarily conceded that subject-matter jurisdiction was lacking from the inception of this case.

Simply put, Aetna Life's attempt to play fast and loose with who is in, and who is out of, the lawsuit to avoid dismissal based on jurisdiction cannot be countenanced.

**A.      The Court should not drop HVSC as a Party, as HVSC has been an indispensable party since Aetna Life commenced suit**

One threshold and dispositive issue facing the Court is whether it should order that HVSC be dropped as a defendant five years after Aetna Life initiated its suit.  If the answer is "no," then this case must be dismissed for lack of subject-matter jurisdiction as complete diversity is lacking.

Today, Aetna Life attempts to peddle the absurd fiction that HVSC is now a dispensable party in order to avoid the outright dismissal of its action for want of subject-matter jurisdiction. Inherent in its argument is the fact that this Court has lacked subject-matter jurisdiction over this case since the day Aetna Life commenced suit on June 5, 2013, against only HVSC.  Also inherent in Aetna Life's argument is the fact that HVSC was clearly an "indispensable party" when (1) Aetna Life amended its complaint on December 2, 2013; (2) Aetna Life settled its claims against HVSC on July 17, 2015,[2] (3) the Court entered an order retaining jurisdiction to enforce the settlement between HVSC and Aetna Life on June 20, 2015 (D.E. 161, docketed on June 21, 2015) and (4) at all times prior to May 14, 2018 (a three year period), during which

---

[2] A copy of the Confidential Settlement Agreement and Mutual Releases between Aetna Life and HVSC ("Settlement Agreement") is attached hereto as Exhibit A.    Paragraph 20 of the agreement provided:



Ex. A, p. 9, ¶20.

Aetna Life left this Court's June 20, 2015 Order in place so that it could invoke the power of the Court, if needed, to compel HVSC to comply with the settlement's terms.

As part of the July 17, 2015 settlement, Aetna Life extracted, *inter alia*, the following from HVSC:

1. ██████████████████████████████████████████████████████████

   ██████████  Ex. A, Settlement Agreement, Section 1.

   ██████████████████████████████████████████████████████████

   ██████████████████████████████████████████████████████████

   ██████████████████████████████████████████████████████████

   ██████████████████████████████████████████

   ██████████████████████████████████████████████████████████

   ██████████████████████████████████████████████████████████

   ████████████████████████  Ex. A, Settlement Agreement, § 8.

Aetna Life now claims for the first time that "there is **no further need** for this Court to retain jurisdiction." D.E. 222, p. 13 (emphasis added). *A fortiori*, Aetna Life's current position is that the presence of HVSC was previously needed in order for it to obtain "complete relief."

In support of its position, Aetna Life filed the Declaration of Susan Kirch (D.E. 222-1). In her declaration, Ms. Kirch asserted that since July 17, 2015, HVSC "has fully discharged its obligations under the terms of the Settlement Agreement." *Id.* at ¶ 4. Ms. Kirch's declaration failed to disclose that, ████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████  Ms. Kirch also failed to disclose that under the Settlement Agreement, ████████

██████████████████████████████████████████████████████████████

███████████ Aetna Life's selective disclosures regarding HVSC's satisfaction of the terms of the Settlement Agreement should be recognized as a continual attempt to disclose only such facts as necessary to retain the façade of jurisdiction.[3]  Despite HVSC's continuing obligations under the Settlement Agreement (the enforcement of which the Court currently retains jurisdiction over), Aetna Life professes that jurisdiction over HVSC is no longer necessary.  Aetna Life's instant position, however, is not because the enforcement of the Settlement Agreement's terms may not be necessary, but rather because Aetna Life understands that the continuing jurisdiction over HVSC clearly destroys the Court's subject-matter jurisdiction.  Having obtained substantially all it wanted out of the settlement with HVSC, Aetna Life seeks to jettison the remainder of the Settlement Agreement's benefits in hopes of gaining an even larger future judgment against the Foundation Defendants.  Under such circumstances the Court should not "in equity and good conscience" determine that HVSC should be dropped as a party.  *See* Fed. R. Civ. P. 19(b).

Under Rule 19(a), a person is an indispensable party if "in that person's absence, the court cannot accord complete relief among the existing parties."[4]  Fed. R. Civ. P. 19(a)(1)(A).

---

[3] Intentionally or not, Ms. Kirch's declaration is ambiguous.  The declaration asserts that "Since that time, [HVSC] has fully discharged its obligations under the terms of the Settlement Agreement."  Declaration of Susan Kirch (D.E. 222-1), ¶ 4.  The declaration can be read in two ways.  The declaration could be read to mean that HVSC has fulfilled all of its obligation under the Settlement Agreement and therefore it has no future obligation.  But the declaration does not explicitly assert that HVSC has no future obligation and the declaration does not assert that the Court need no longer retain jurisdiction over HVSC.  Alternatively, the declaration can be read to mean that HVSC has fully discharged its obligations under the Settlement Agreement to date.  Under this reading, Aetna Life could seek to enforce the Settlement Agreement, if, for example, ███████████████████████████████████████

███████

[4] Alternatively, a person may be an indispensable party if the person's absence in the litigation would "impair or impede" the person's ability to protect his/her interests.  Fed. R. Civ. P. 19(a)(1)(B).  HVSC's absence from the litigation when it was first filed would obviously have "impaired or impeded" HVSC's ability to protect its interests.  Examining whether HVSC is indispensable in 2018 (five years after the suit commenced and ███████████████ ███████████████ subject to the Court's jurisdiction) would make jurisdiction a moving

HVSC was clearly an indispensable party when Aetna Life commenced this litigation. First, HVSC was the only defendant when Aetna Life filed suit. Accordingly, HVSC was indispensable because, in the absence of HVSC, Aetna Life could not have obtained "complete relief." *See* Fed. R. Civ. P. 19(a). Simply put, without HVSC as a defendant, Aetna Life could not have commenced suit and could not have received any relief. Second, HVSC remained an indispensable party when the Amended Complaint was filed. Aetna Life's Amended Complaint named HVSC as a defendant in 8 of its 9 claims, with HVSC being the sole defendant to Count VI for breach of contract. D.E. 29. Unquestionably Aetna Life could only have obtained "complete relief" on its various claims by HVSC's presence in the case. For example, in Count VIII, Aetna Life sought equitable relief "compelling Defendants to stop the unlawful practices described in the Complaint." Am. Compl., ¶99. Similarly, Count IX sought an equitable accounting, *inter alia*, to identify "each Aetna member for whom [HVSC] waived in full or in part required out-of-pocket payments."[5] *Id.* at 102. The only count that HVSC was not a defendant to was "Count IV Insurance Fraud: Aiding and Abetting." While Aetna Life asserted this count only against the Foundation Defendants, the count was and remains dependent on a

---

target, which the courts have consistently rejected. No matter how indispensable a party may be prior to a settlement, after a settlement that party is arguably always dispensable, since that party's rights and obligations have already been determined vis-à-vis the other parties to the case. Under Aetna Life's position, no matter how indispensable a party is to a litigation, that is irrelevant for jurisdictional purposes provided the indispensable party has settled the case prior to the jurisdictional defect being exposed. Such a conclusion is inconsistent with the purpose of the long-existing diversity jurisdiction rules.

[5] HVSC was clearly an indispensable party in connection with Aetna Life's accounting count. *See* C. Wright & A. Miller, 7 *Federal Practice & Procedure* § 1613 (3d ed. 1986) ("Similarly, in suits seeking an accounting the party demanding it and **the person from whom the accounting is sought generally must be joined**.") (emphasis added).

finding that HVSC committed insurance fraud.[6] *See* Am. Compl., ¶ 77 ("Aetna was injured as a result of [HVSC]'s conduct.").

Under Rule 19(b), given that HVSC is an indispensable party, the Court must determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed." Fed. R. Civ. P. 19(b).  In this case, the answer should be a prompt dismissal of the entire action.[7]  *See Publicker Indust., Inc. v. Roman Ceramics, Corp.*, 603 F.2d 1065, 1069 (3d Cir. 1979) ("the district court is precluded from retaining diversity jurisdiction by dismissing a nondiverse party if that party is indispensable under Fed. R. Civ. P. 19").  Aetna Life's request to drop HVSC five years after it commenced suit makes a mockery of the narrow principles applied by courts in determining whether diversity jurisdiction exists.  The Supreme Court's decision in *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 576 (2004) made clear that "a court's subject-matter jurisdiction cannot be expanded to account for the parties' litigation conduct."  Here that is exactly what Aetna Life is attempting to do.  Aetna Life argues based solely on its litigation conduct – i.e. settling with one of the non-diverse parties two years into the litigation – that it can create subject-matter jurisdiction, where no such jurisdiction previously existed.  This is simply not permissible.  "Rule 19 does not allow plaintiffs to request severance of parties in order to manufacture federal jurisdiction."  *Sta-Rite Indus., Inc. v. Allstate Ins. Co.*, 96 F.3d 281, 287 (7th Cir. 1996).

Moreover, because "[u]ncertainty regarding the question of jurisdiction is particularly undesirable, and collateral litigation on the point particularly wasteful," *Grupo Dataflux*, 541

---

[6] Count IV for aiding and abetting insurance fraud has not yet been dismissed.

[7] If Aetna Life is unable to successfully bring suit in state court, after this Court dismisses the case for lack of subject-matter jurisdiction, this is "a result of their own litigation strategy and not a sufficient reason for them to remain in federal court on these claims." *Picciotto v. Continental Cas. Co.*, 512 F.3d 9, 19 (1st Cir. 2008).

U.S. at 582, courts properly measure jurisdiction at the time the lawsuit is filed. *Id.* at 571. Under Aetna Life's construction, diversity jurisdiction is a moving target with withholding the identities of the real parties in interest and their citizenship rewarded, rather than sanctioned. Under Aetna Life's construction, a plaintiff can also wrongly pursue litigation in federal court without jurisdiction, settle with non-diverse parties, and then continue to pursue the litigation against the remaining "diverse" parties. This makes a mockery of federal jurisdiction, as at its heart, Aetna Life's proposal would gut and make useless the complete diversity and the time of filing rules. Accordingly, Aetna Life's position must be rejected.

**B.    The Parties' dispute involves more than just HVSC and ten self-insured plans.**

Aetna Life erroneously tries to minimize the parties' dispute claiming that the dispute is limited to HVSC and at most ten self-insured plan sponsors. D.E. 222, p. 9. The question raised by the Court, however, involves far more than just ten self-insured plans, as the Court's February 23, 2018 Order directed Aetna Life to identify "by name **all of the self-insureds** on behalf of whom Plaintiff seeks damages in this case." D.E. 216 (emphasis added). In light of the Court's Order and the Foundation Defendants' existing jurisdictional challenge, the citizenship of all 200 plus separate self-insured entities are at issue. Nevertheless, Aetna Life failed to submit any evidence establishing the citizenship of these self-insured entities.

Aetna Life misleadingly phrased the issue very narrowly to make the dispute seem like a minor ministerial matter. Nothing could be further from the truth, as the need for complete diversity on both sides is fundamental to the Court's jurisdiction.

> Congress has established the basic rule that **diversity jurisdiction exists under 28 U.S.C. § 1332 only when there is complete diversity of citizenship. "The policy of the statute calls for its strict construction."** *Healy v. Ratta*, 292 U.S. 263, 270, 54 S. Ct. 700, 703, 78 L. Ed. 1248; *Indianapolis v. Chase Nat. Bank*, 314 U.S. 63, 76, 62 S. Ct. 15, 20, 86 L. Ed. 47; *Thomson v. Gaskill*, 315 U.S. 442,

446, 62 S. Ct. 673, 675, 86 L. Ed. 951; *Snyder v. Harris*, 394 U.S., at 340, 89 S. Ct., at 1058.  To allow the requirement of complete diversity to be circumvented as it was in this case would simply flout the congressional command.

*Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 377 (1978) (emphasis added).  There is no exception to this well-established rule.

Aetna Life further argues that: "To the extent Aetna remains unable to identify the citizenship of the **10 remaining self-insured plans sponsors** before this Court rules on Foundation's motion to dismiss, this Court should dismiss claims relating to those plans as well, leaving only claims under fully insured plans, as well as under the at least 193 self-insured plans whose sponsors are diverse to Foundation."  Aetna Life Response Brief, p. 16 (emphasis added). As an initial matter, Aetna Life wrongly identified the number of entities for which it admits it does not know the citizenship of.  The number is 14, not 10.[8]  Second, Aetna Life failed to

---

[8] Aetna Life's revised "Citizenship of Plan Sponsors" Chart (D.E. 222-2; see also D.E. 2231-1, pp. 2-7) failed to identify the citizenship of 14 entities:

1. American Enterprise Institute for Public
2. Arkema, Inc.
3. Delaware Valley Health Insurance Trust
4. Department of Defense – Nonappropriated
5. DVHIT – Centennial School District
6. EMR, LLC
7. Fox Rothschild, LLP
8. GE Healthcare Preferred
9. KMPG LLP
10. Lockheed Martin
11. New Jersey State Health Benefit Program
12. Ricoh USA, Inc.
13. ShopRite Corp.
14. SNJ Regional Employee Benefit Fund.

identify the claims associated with each of these entities. Is there only one claim associated with each entity or are there multiple claims associated with each entity? Aetna Life provides no guidance on exactly which claims the Court should dismiss.

Rather than examine jurisdiction when it commenced suit, Aetna Life wrongly asserts that a plaintiff may avoid dismissal by playing shell games of plaintiffs and defendants until subject-matter jurisdiction is finally established by manipulating the Federal Rules of Civil Procedure governing adding and dismissing parties. *Cf.* Fed. R. Civ. P. 82 ("These rules do not extend … the jurisdiction of the district court …"). In the case at bar, Aetna Life feels free to add and subtract the total potential real parties in interest at will. The Court's February 23, 2018 Order directed Aetna Life to identify "by name **all of the self-insureds** on behalf of whom Plaintiff seeks damages in this case." D.E. 216 (emphasis added). In response to the Court's Order, on March 30, 2018, Aetna Life produced a chart identifying 186 self-insured plan sponsors. *See* D.E. 222, p. 6. Aetna Life also identified Aetna Health Management, LLC as a real-party-in-interest plaintiff for the first time. Six weeks later, on May 14, 2018, Aetna Life admits that it had "identified an additional 17 self-insured plan sponsors," bringing the total number of self-insured plaintiffs to 203.[9] *Id.* at 2-3, 6. Aetna Life further admits that, despite the

---

The Foundation Defendants submit that Aetna Life has not fully and properly identified the name of the first entity: American Enterprise Institute for Public. What the proper name of this entity is the Foundation Defendants do not know.

[9] Aetna Life's May 29, 2018 Reply Brief claims that the Foundation Defendants were "not correct" when they pointed out that Aetna Life had omitted "Apartment Investment and Management Group" from its lists of plan sponsors. D.E. 223, p. 6. The Foundation Defendants were not incorrect. Aetna Life omitted "Apartment Investment and Management Group" from its March 30, 2018 lists of plan sponsors submitted to the Court. D.E. 219-1, p. 1. Subsequently, Aetna Life then added "Apartment Investment and Management **Corp**" to its May 14, 2018 list of plan sponsors. D.E. 222-2, p. 1 (emphasis added). Aetna Life has not explained the change in this entity's name. Aetna Life asserts that the entity is a citizen solely of Maryland. D.E. 223-1, p. 2. Aetna Life's alleged support for the citizenship of "Apartment Investment and Management Corp" is merely a webpage (thus, hearsay at best). D.E. 223-1, p. 98-100. The

passage of nearly five years since it first brought suit based on the claims of these self-insured entities, it does not have assignments from at least 14 of the self-insured plan sponsors, which is necessary to pursue such claims.  D.E. 222, p. 6 n.1.  Aetna Life, however, failed to identify by name who each of these 14 plan sponsors are and merely asserts that it "will seek ratification under Rule 17 from these plans in advance of the trial."  *Id.*  Thus, Aetna Life expects both the Court and the Foundation Defendants to accept waiting until some point in the future to see whether the claims of these real parties in interest are part of this lawsuit or not.

Aetna Life further disputes that "these self-insured plan sponsors are real parties in interest."[10]  Aetna Life's Response Brief, p. 15.  Nevertheless, Aetna Life argues that "this Court need not decide that issue because it has the power to sever and dismiss those claims, eliminating any dispute over diversity jurisdiction in this action."  *Id.*  As noted above, in light of the Court's Order and the Foundation Defendants' challenge to subject-matter jurisdiction over all real parties in interest, taking Aetna Life's statement at face value, all the self-insured plan claims should be dismissed!  Assuming *arguendo* that Aetna Life does not stand by its current position, there remain many problems with Aetna Life's proposal, including that it has failed to establish with evidence which self-insured plans should remain in the suit and which plans should be dismissed.  Indeed, Aetna Life has failed to identify which real-party-in-interest plaintiffs are ERISA plans and which self-insured plaintiffs are other entities.

---

webpage Aetna Life filed with the Court does not (1) list the name of the entity or (2) state where the alleged entity is incorporated.

[10]     Aetna Life incorrectly asserts that the Court needs to look at the citizenship of a plan's sponsor to determine diversity.  The plan's sponsor is irrelevant for diversity purposes, as the plan itself was the allegedly injured party and the only party entitled to any recovery.  Accordingly, the Foundation Defendants submit that Aetna Life had a duty to prove the citizenship of each such plans, since this is the relevant question for determining subject-matter jurisdiction.

As detailed in Section II.C. of the Foundation Defendants' May 14, 2018 Brief (D.E. 221), Aetna Life has failed to identify the citizenship of the ERISA Plans, who are real parties in interest. Accordingly, in light of the failure to establish complete diversity of citizenship, the Court should dismiss the suit in its entirety.

## C. Aetna Health PA and Aetna Health NJ are relevant for diversity purposes.

Aetna Life's Response Brief appears to assert that its failure to bring suit in the name of Aetna Health, Inc. (a Pennsylvania corporation) ("Aetna Health PA") and Aetna Health, Inc. (a New Jersey corporation) ("Aetna Health NJ") is irrelevant. *See* Aetna Life's Response Brief, p. 10-11 ("There is no evidence that Aetna Health PA and Aetna Health NJ paid any of the claims at issue in this litigation."). But for the reasons discussed at length in pages 5-6 of the Foundation Defendants' original Motion to Dismiss (D.E. 208), Aetna Health PA and Aetna Health NJ were and remain the real parties in interest in connection with Aetna Life's tortious interference with contractual relations claim,[11] since these entities (not Aetna Life or Aetna Health Management, LLC) entered into the physician contracts that the Foundation Defendants allegedly interfered with. Thus, to the extent that there is any damages claim arising from the Foundation Defendants' actions, Aetna Life's review of the contracts at issue would have made clear that any such claim belonged to Aetna Health PA or Aetna Health NJ, and not to either Aetna Life or Aetna Health Management, LLC. Nevertheless, Aetna Life deliberately misled the Defendants and the Court into understanding that the contracts at issue were directly between the physician-owners and Aetna Life. Am. Compl., ¶ 79 ("The physician-owners all have contracts

---

[11] Aetna Life continues to assert a tortious interference count (D.E. 29, ¶¶ 78-83, Count V) in its own name against the Foundation Defendants. Aetna Life has failed to establish how it is the proper party to prosecute a tortious interference injury allegedly suffered by one of its affiliates.

- 12 -

with Aetna [Life].").[12]  Of course, if Aetna Life had disclosed this information at the time it filed the Amended Complaint, the clear lack of diversity jurisdiction would have been obvious on the face of the pleading.  By hiding this information, Aetna Life maintained a façade of diversity jurisdiction.

In further attempting to excuse its failure to bring suit in the name of Aetna Health PA and Aetna Health NJ, Aetna Life asserts that "There is also no question that all additional Aetna affiliates that paid the fully insured claims at issue in this litigation were diverse to FSA and FSM."  Aetna Life's Response Brief, at p. 10.  In fact, a significant question exists as to which Aetna entity really paid what claims.  Aetna Life failed to introduce any evidence as to which of its entities actually paid the fully-insured claims at issue in this litigation.  Aetna Life initially alleged in both its Complaint and its Amended Complaint that it paid all the fully-insured claims.  *See*, *e.g.*, Complaint, ¶ 21 (HVSC's actions caused it to "be overpaid by Aetna"); Amended Complaint, ¶36 (defendants' actions "cause[d] Aetna to pay …"), ¶ 38 ("Aetna paid [HVSC] nearly $88,000 for this procedure").  Aetna Life's expert reports failed to identify any alleged injured party other than Aetna Life.[13]  In its November 13, 2017 Response to the Motion to Dismiss, Aetna Life again alleged that it alone paid the fully insured claims at issue.  D.E. 211, p. 6, n.3 ("By contrast, 'fully insured' plans are not only administered but also underwritten and insured by Aetna [Life].").  However, in its March 30, 2018 Response, Aetna Life alleged for the first time that Aetna Health Management, LLC paid "for members covered by **certain plans**, primarily HMO and HMO/QPOS plans."  Response, p. 4 (emphasis added).  While Aetna Life

---

[12] In both its original Complaint and the Amended Complaint, Aetna Life explicitly defined "Aetna" to mean only Aetna Life Insurance Company.  D.E. 1, ¶ 1; D.E. 29, p. 1.

[13] Aetna Life's original Expert Witness Report was dated November 21, 2014.  Aetna Life's Supplemental Expert Witness Report was dated May 4, 2015.

made these allegations, it failed to produce an affidavit or any other evidence as to which claims it paid and which claims, if any, Aetna Health Management, LLC paid.

Aetna Life's recent assertion that Aetna Health Management, LLC paid the claims at issue also constitutes a red-herring that is not material to the real-party-in-interest issue before the Court. The question for diversity of citizenship purposes is not what entity finally transmitted any given payment to HVSC, but rather what entity allegedly suffered a real loss as a result of any payment to HVSC. The fully-insured claims at issue in this case are insurance claims. If an actual loss was suffered, it would have been suffered by an insurance company. A review of the public website of the Pennsylvania Insurance Department failed to list the entity that Aetna Life now asserts made the payment – Aetna Health Management, LLC – as an insurance company. http://www.insurance.state.pa.us/scrpts/gfsearch?level=1&item=BeginA. At best, Aetna Health Management, LLC is likely just a pass-through entity. In contrast, Aetna Health PA is registered with the Pennsylvania Insurance Department. http://www.insurance.state.pa.us/scrpts/gfsearch?level=2&item=gf0040. To the extent that any actual loss was suffered, Aetna Health PA likely would have suffered some or all of the fully-insured loss.

## D. Aetna Life failed to submit competent proof showing the existence of diversity jurisdiction.

Aetna Life's recent pleadings regarding jurisdiction are fundamentally flawed, as Aetna Life has failed to meet its burden to come forth with competent evidence (i.e. affidavits and/or sworn declarations) proving the actual citizenship of the real parties in interest, which is required to establish jurisdiction. Aetna Life's pleadings supporting jurisdiction, however, are filled with

speculation and conjecture, rather than facts.[14]  As detailed in Section II.B. of the Foundation

Defendants' May 14, 2018 Brief (D.E. 221), Aetna Life failed to submit the "competent proof"

necessary to establish the Court's jurisdiction. *See Hertz Corp. v. Friend,* 559 U.S. 77, 96-97

(2010).   Rather than provide the Court with any proof of actual citizenship, Aetna Life's

Response was replete with various unsworn "beliefs," which are inadequate as a matter of law to

establish diversity jurisdiction.  Aetna Life's Response Brief failed to correct its prior failure to

produce evidence establishing jurisdiction.  Instead of submitting this required evidence, Aetna

Life continues (nearly five years into this case) to ask the Court to accept the truth of its unsworn

jurisdictional allegations on their face.  Aetna Life even maintains that it is entitled to additional

time to submit evidence establishing diversity of citizenship.  *See* Aetna Life's Response Brief,

p. 16 (arguing that it should be permitted to submit evidence proving jurisdiction up to the time

immediately "before the Court rules" on the motion to dismiss).   Aetna Life's unsworn

allegations must be rejected as wholly inadequate to satisfy its jurisdictional burden of proof.

---

[14] By way of merely one representative example of Aetna Life's pure speculation, the Court can look at the alleged citizenship of "CSM America, Inc." Aetna Life asserts that this entity is a citizen of Georgia. D.E. 223-1, p. 2. But Aetna Life's supporting documentation (all hearsay from different websites) appears to be for two different companies. D.E. 223-1, p. 215-218. One webpage identifies CSM America as "among the most trusted names when it comes to airport cleaning and maintenance services" and lists a Georgia address. *Id.* at p. 216-217. The other website identifies "CSM America, Inc." as "providing milling of flour and meal from grain" with a Kansas address. *Id.* at 218. Neither webpage identifies either company's state of incorporation. Indeed, it is unclear what type of entity the Georgia entity is. Rather than providing an affidavit as to who is the correct real-party-in-interest and what the plan's citizenship is for diversity purposes, Aetna Life asks the Court to guess which, if either, is the correct entity and to make assumptions about the states of incorporation, if not also the nerve centers.

Aetna Life's entire exhibit 1 (D.E. 223-1) filed on May 29, 2018 is riddled with problems (including, but in no way limited to, identifying LLC and partnerships based on where the LLC/partnership was allegedly formed and not the citizenship of its members), which problems become obvious with any more than a casual examination. Simply put, Aetna Life has completely failed to meet its evidentiary burden of proving diversity jurisdiction.

Accordingly, as Aetna Life failed to satisfy its burden of proof of establishing jurisdiction, its Amended Complaint must be dismissed.

### E.   The Self-Insured Plans are the Real Parties in Interest.

As the Court appropriately recognized in directing the parties to the United States Court of Appeals for the District of Columbia's opinion *In re Lorazepam & Clorazepate Antitrust Litigation*, 631 F.3d 537 (D.C. Cir. 2011), the self-insured plans are the real parties in interest regarding their alleged losses. As such, their citizenship must be examined to determine whether the Court has subject-matter jurisdiction over the claims at issue. *Id.* at 541. Those plans, not Aetna Life, "were the ones who felt the effect of defendants' alleged violations with regard to the claims asserted on their behalf." *Id.* at 540. As such, they "are therefore the 'real and substantial' parties with respect to the claims asserted on their behalf." *Id.*; see also, *Airlines Reporting Corp. v. S & N Travel, Inc.,* 58 F.3d 857, 862 (2d Cir. 1995).

### 1.   The issue of real parties in interest is a threshold constitutional issue

Rather than decide this fundamental issue for purposes of determining jurisdiction, Aetna Life argues in its Response Brief that the Court should defer the issue until trial: "Aetna [Life] is prepared to present testimony at trial that these provision were intended to operate as assignments that permit Aetna [Life] to sue in its own name to collect overpayments under self-insured plans." D.E. 222, p. 17. Aetna Life further argues that the issue of who are the real parties in interest should not be addressed: "Foundation must wait to litigate that issue as a merits issue at trial." *Id.* at 19.

Aetna Life's position is completely contrary to long-established Supreme Court precedent regarding jurisdiction. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("Subject-matter limitations on federal jurisdiction serve institutional interests. They keep the

federal courts within the bounds the Constitution and Congress have prescribed. Accordingly, subject-matter delineations must be policed by the courts on their own initiative even at the highest level."). Thus, whether or not the Court has subject-matter jurisdiction is a threshold question that the Court must address whenever an issue is raised. *See Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94-95 (1998) ("The requirement that **jurisdiction** be established as **a threshold matter** 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (emphasis added); *Ruhrgas AG*, 526 U.S. at 583 ("Article III generally requires a federal court to satisfy itself of its jurisdiction over the subject matter **before** it considers the merits of a case.") (emphasis added). Such a decision may not be deferred. *See Steel Co.,* 523 U.S. at 101-102 ("For a court to pronounce upon the meaning or the constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires."). Accordingly, either this Court has subject-matter jurisdiction or it does not. If it does not, it may not act and it must promptly dismiss this case.

Rather than recognize these constitutional limitations, Aetna Life encourages the Court to ignore them. Apparently, Aetna Life wants to use the same litigation tactics it previously used to extract a settlement from HVSC – avoid disclosures and determinations of subject-matter jurisdiction so it can extract a settlement based on a fear of a potentially adverse result at trial. As shown above, due to the clear restriction of Article III, the Court must reject Aetna Life's suggestion.

### 2.      Aetna Life is not the real party in interest for the self-insured claims.

Both Foundation Defendants' original motion to dismiss and reply brief addressed at length why the self-insured plans, and not Aetna Life, are the real parties in interest. D.E. 209,

pp. 13-16; D.E. 213, pp. 5-12. The bottom line is that, like the plaintiff in *Airlines Reporting Corp. v. S & N Travel, Inc.,* 58 F.3d 857 (2d Cir. 1995), at best, Aetna Life is only suing in a representative capacity.[15] Any damages recovered in this lawsuit, less costs, go back to the self-insured plans. As such, Aetna Life is not a proper party for determining diversity jurisdiction. *Id.* at 864; *see also*, *In re Lorazepam & Clorazepate Antitrust Litigation*, 631 F.3d at 540.

### 3.    Diversity jurisdiction depends on the citizenship of the self-insured plans.

The self-insured plans, not necessarily the plan participants, are the real parties in interest. Aetna Life mischaracterizes the Foundation Defendants' position arguing that the Foundation Defendants believe that the citizenship is determined by the citizenship of the "the ultimate beneficiaries of the litigation." D.E. 222, p. 21. As discussed in the Foundation Defendants' May 14, 2018 Brief, the Court must look at the citizenship of the plan which owns the actual claims at issue, and who was allegedly injured by the conduct at issue. But regardless of what the citizenship of each plan turns out to be, it is their citizenship, not Aetna Life's citizenship, that is determinative of the diversity jurisdiction question before the Court.

### 4.    Aetna Life's assignments are collusive for diversity purposes.

Finally, Aetna Life erroneously argues that its assignments are not collusive in violation of long standing precedent and Section 1359. As an initial matter, the Court does not have to even reach this question assuming that it determines the self-insured plans are real parties in interest as determined by the United States Court of Appeals for the District of Columbia in its *In re Lorazepam & Clorazepate Antitrust Litigation*, 631 F.3d 537 (D.C. Cir. 2011) opinion.

As previously discussed in the Foundation Defendants' original reply brief, Aetna Life's situation is analogous to the situation in *Airlines Reporting Corp. v. S & N Travel, Inc.,* 58 F.3d

---

[15] As discussed above, Aetna Life admits that it is not currently authorized to bring claims on behalf of a number of the self-insured plans. D.E. 222, p. 19, n.3.

857 (2d Cir. 1995). *See* D.E. 213, pp. 7-10. Aetna Life concedes that it does not currently have assignments from a variety of self-insured plans.[16] D.E. 222, p. 19, n.3. Accordingly, any assignment at this point in time to allow Aetna Life to pursue litigation against the Foundation Defendants would clearly be prohibited under both long standing precedent and Section 1359. Additionally, as to the remainder of the self-insured plans, Aetna Life failed to introduce any actual evidence as to the assignment of said claims to it.[17] Moreover, to the extent that any of the self-insured plans have explicitly given their consent to this litigation, Aetna Life has introduced no evidence that such consent was given prior to the commencement of the litigation.

Aetna Life erroneously encourages the Court to read Section 1359 narrowly, even suggesting that the Court must examine the subjective motive of the parties to the assignment in determining whether diversity jurisdiction is proper.[18] D.E. 222, pp. 22-23. The Supreme Court, however, has made clear that "Section 1359 should ... be construed broadly to bar any improper

---

[16] In light of Aetna Life's admitted failure to obtain an actual assignment of claims from these self-insured plans, it lacks Article III standing to bring claims on their behalf.

[17] Aetna Life erroneously invokes Pennsylvania state law to argue that its assignments are valid. D.E. 222, p. 19-20. As discussed in the Foundation Defendants' November 28, 2017 Brief, in *Kramer v. Caribbean Mills, Inc.,* 394 U.S. 823, 828-29 (1969), the Supreme Court rejected Aetna Life's suggestion that a party may create diversity jurisdiction by simply manufacturing "valid" state law assignments. D.E. 213, p. 6. Additionally, Aetna Life, which claims to be a Connecticut entity, fails to explain why Pennsylvania law would govern its contracts with all the different self-insured plans.

[18] Of course, Aetna Life failed to introduce any evidence as to the subjective motive of each of the 200 plus self-insured plans regarding the alleged assignment or even any evidence of its motive.

Aetna Life also erroneously argues that the assignments should be allowed as fostering convenience as "[w]ithout an assignment, nearly 200 self-funded plans at issue in this litigation would have to file 200 separate lawsuits." D.E. 222, p. 24. The plaintiff in *Airlines Reporting Corp.*, raised the same issue (the assignment "greatly reduce[s] duplication of effort by individual carriers ... and provides an efficient and cost effective process"), which the court appropriately rejected. *Id.* at 863-64. While assigning claims to a single representative in order to pursue a single lawsuit may be more convenient, it does not allow parties to escape the requirements of complete diversity.

attempt to create federal diversity jurisdiction." *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 475 (2d Cir. 1976). For the reasons set forth in detail in Section II.A. of the Foundation Defendants' November 28, 2017 Reply Brief, the Court should reject Aetna Life's attempt to manufacture diversity jurisdiction by assignment.

### F.    The Court should not sever and dismiss the Self-Insured Plans.

Aetna Life suggests that the Court should sever claims of the self-insured plans, "whose sponsor[s] [are] not diverse." D.E. 222, p. 25. But Federal Rules of Civil Procedure 17 and 19 talk about parties, not about claims. Rule 21 also discusses the adding or dropping of a party. Only Rule 21 mentions claims at all, stating that "[t]he court may also sever any claim against a party." Fed. R. Civ. P. 21. But severing a claim is very different from dropping a party. When a claim is severed, the claim is not dismissed, but rather continues to be dealt with by the Court in a separate action. *See DirectTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006). In the instant case, however, the presence of the owners of the claims (who are the real-party-in-interest plaintiffs) destroys the Court's subject-matter jurisdiction. Thus, the Court cannot sever these claims, as the Court lacks jurisdiction over the parties and therefore their claims.

## G.     CONCLUSION

For the reasons set forth above, the Foundation Defendants respectfully request that the

Court issue an Order dismissing Aetna Life's Amended Complaint and awarding the Foundation

Defendants their attorney fees and costs in defending this action.

Respectfully submitted,

**Montgomery, McCracken Walker & Rhoads, LLP**

 s/ David Dormont
Richard M. Simins (PA Atty. # 57754)
David Dormont (PA Atty. # 66252)
1735 Market Street, 21st Floor
Philadelphia, PA 19103
Telephone:  (215) 772-1500

*Attorneys for Defendants Foundation Surgery Affiliates,*
*LLC and Foundation Surgery Management, LLC*

Date:  May 30, 2018

# EXHIBIT A

REDACTED

# EXHIBIT B

REDACTED

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 30th day of May, 2018, I caused to be served a true and

correct copy of the foregoing upon counsel indicated below by electronic mail:

Mark J. Schwemler
Elliott Greenleaf & Siedzikowski, P.C.
925 Harvest Drive, Suite 300
Blue Bell, PA 19422
mjs@elliottgreenleaf.com


 s/ David Dormont
David Dormont